The judgment against W. K. Noble is affirmed.

---

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* STATE.

Opinion delivered December 16, 1907.

1. CARRIERS—DUTY TOWARD SHIPPERS.—Kirby's Digest, § 6803, requiring carriers to "receive, load, unload, transport, store and deliver to the consignee thereof all property tendered for shipment," and section 6804 requiring them to furnish cars for shipment, and section 6808 rendering a violation of these requirements a cause of action in favor of an injured shipper, are declaratory of common-law rights. (Page 317.)

2. SAME.—It is unnecessary, in a suit against a railroad company for failure to furnish freight cars when requested, to determine whether the railroad commission had authority to adopt a rule requiring carriers to furnish freight cars within a certain time, if the evidence shows that the railroad company wholly failed to furnish the cars requested by plaintiff. (Page 318.)

3. SAME—PENALTY FOR FAILURE TO FURNISH CARS—DEFENSE.—In an action against a railway company for failure to furnish cars when requested, it is no defense that defendant had sufficient car equipment to meet the demands of its traffic, but that it had entered into an agreement with an association of railroads for the exchange of freight cars under the operation of which defendant's cars were being held by other companies, and that it was unable to procure their return

within a reasonable time, if it does not appear that this association had adopted such reasonable rules as would enable defendant, under ordinary circumstances, to discharge its duty to afford transportation facilities to shippers. (Page 318.)

Appeal from Arkansas Circuit Court; *Eugene Lankford,* Judge; affirmed.

The prosecuting attorney, under direction of the Railroad Commission of Arkansas, brought suit against the St. Louis Southwestern Railway Company to recover the statutory penalty for failure to furnish cars to shippers. The complaint alleges that the Railroad Commission adopted the following order:

"Office of Railroad Commission of Arkansas. Order No. 305, effective August 5, 1905.

"It is ordered by the Commission that its rules be so amended that when a shipper makes written application to a railroad company for a car or cars, to be loaded with any kind of freight embraced in the tariff of said company, stating in said application the character of the freight and its final destination, the railroad company shall furnish same within five days from 7 o'clock A. M. the day following such application. Provided, that when a shipper orders a car or cars and does not use the same, he shall pay demurrage for such time as he holds the car or cars, at the rate of $1 per car per day, dating from 7 A. M. after car or cars are placed. Or, when the shipper making such application specifies a future day on which he desires to make a shipment, giving not less than five days' notice thereof, computing from 7 o'clock A. M. the day following such application, the railroad company shall furnish such car or cars on the day specified in the application. When freight in carloads or less is tendered to a railroad company, and correct shipping instructions given, the railroad agent must immediately receive the same for shipment, and issue bills of lading therefor, and whenever such shipments have been so received by any railroad company, they must be carried forward at the rate of not less than fifty miles per day of twenty-four hours, computing from 7 o'clock A. M. the second day following receipt of shipment. Provided that, in computing the time of freight in transit, there shall be allowed twenty-four hours at each point where transferring from one railroad to another, or rehandling

freight is involved. The period during which the movement of freight is suspended on account of accident, or any cause not within the power of the railroad company to prevent, shall be added to the free time allowed in this rule, and counted as additional free time.

"The Commission reserves the right on its own motion to suspend the operation of these rules, or any one or more of them, in whole or in part, whenever it shall appear that justice demands such action, and the Commission will, upon complaint, hear and act upon applications for a like suspension.

"Nothing in these rules shall apply to shipment of. live stock and perishable freight where the rules of this Commission or the laws of the State require the more prompt furnishing of cars or movement of freight than provided for by these rules.

"By order of the Commission.

"Little Rock, Ark., July 19, 1905.

"W. E. FLOYD, *Secretary.*"

The complaint alleges further that Phillip Reinsch was engaged in selling and shipping hay in carload lots, and at stated times from October 30, 1905, to January 20, 1906, had made demands upon defendant to furnish cars for shipping hay, the number of cars aggregating fifty-one in number; that said cars were to be furnished within five days from demand; that, in violation of Order 305, defendant refused to furnish said cars; that thereupon Reinsch filed complaint with the Railroad Commission, and upon a hearing the Commission adjudged that the railway company was in default, and directed the prosecuting attorney to bring this suit to recover the statutory penalty. The prayer of the complaint was that the plaintiff ought to recover the maximum penalty of $1,950.

Defendant demurred to the complaint (1) as not stating a sufficient cause of action and (2) because the order of the Railroad Commission was unreasonable and void. The demurrer was overruled.

The answer set up that defendant was unable to furnish the cars demanded by Reinsch because of an unusual and unexpected demand of cars for the shipment of freight at that season.

The evidence is sufficiently set out in the opinion. There

was a verdict for the plaintiff in the sum of $1,375. Defendant has appealed.

*S. H. West* and *Bridges, Wooldridge '& Gantt,* for appellant.

1. The Commission was without power to make the order, No. 305. There is nothing in the act of March 11, 1899, Kirby's Digest, § 6788 *et seq.,* conferring power on the Railroad Commission to make a rule regarding the furnishing of cars to shippers or enforcing a penalty for failure to comply therewith. The Commission is purely a creature of statute, and possesses no power except such as the statute expressly confers upon it. Its authority must affirmatively appear from the statute. 23 Am. & Eng. Enc. Law, 653; 154 U. S. 362; 17 Ore. 65; 66 Me. 25; 85 Md. 62; 32 Am. & Eng. R. Cas. (U. S.), 186. The Legislature could not constitutionally empower the Commission to go beyond the regulation of rates and prevention of discrimination. Art. 17, § 10, Const.; Amendment No. 4; 62 Cent. Law Jour. 199. Where limited jurisdiction is conferred 'by statute, and also where, as in this case, the suit is penal in its nature, the statute must be strictly construed. 54 Ark. 172; 59 Ark. 244; 67 Ark. 359; 70 Ark. 482; 64 Ark. 271.

2. The order is void, because (a), it is unreasonable. 201 U. S. 321; Tiedeman's Lim. Police Power, 594. (b) It is in conflict with State statutes. Kirby's Digest, § § 6722, 6725, 6733. (c) It is a restriction on interstate commerce. 1 Int. Com. Rep. 689. While the State may, under its police power, make necessary provisions for the health, safety, comfort and convenience of its citizens which affect directly or indirectly, commerce among the States, yet this power is limited to *reasonable* regulations. Calvert, Reg. Commerce, 94; McGehee, Due Process of Law, 306; 163 U. S. 142; 201 U. S. 321; Freund, Police Powers, § 150.

(d) The effect of the order is the same as if it provided that in times of car shortage a carrier should apply all local demands before using any of its cars in interstate business. 202 U. S. 543. Congress having fully provided for the subject of furnishing cars, the regulations of the State Commission must give way thereto. Interstate Com. Act. § 3; Snyders, Am. Int. Com. Act, 69, 237, 238, 242; 158 U. S. 98; 76 Ark. 82.

3. It has been held that § 6804, Kirby's Digest, is but declaratory of the common law as to the duty of a carrier with reference to furnishing transportation facilities. 77 Ark. 357. And at common law as well as under the statutes a carrier is not required to provide in advance for any unprecedented and unexpected rush of business, and will be excused for delay in shipping, or even in receiving goods for shipment, until the emergency can in the regular and usual course of business be removed. *Id.;* 64 Ark. 271; 79 Ark. 59; 4 Elliott on Railroads, § 1470; 2 Hutchinson, Car. (3 Ed.), § 495; Moore, Car. 252; 6 Cyc. 372; 5 Am. & Eng. Enc. of L., 168; 52 S. E. 677; 37 N. W. 432; 14 Rich. Law, 181; 51 Mo. 311; 41 Tenn. 272; 99 S. W. 375; Beale & Wyman, Railroad Rate Reg., § § 263, 264.

4. Inasmuch as previous acts on the part of appellant could not properly be considered in determining whether or not it was negligent or inexcusable in this case, it was error to admit testimony as to the number of cars furnished or not furnished in previous years. 58 Ark. 125; *Id.* 454; 68 Ark. 225; 66 Ark. 494; 76 Ark. 302.

*William F. Kirby,* Attorney General, *F. E. Brown,* Prosecuting Attorney, *Edwin Pettit* and *C. E. Pettit,* for appellee.

1. The validity of the order of the Railroad Commission is not material to this suit, since this is an action to recover the penalty provided for in § 6813 Kirby's Digest, for failure to furnish cars to shippers as required by law. Kirby's Digest, § § 6803, 6804, 6817. But the order is a "rule and regulation to carry into effect a law already passed," and is valid. 9 Am. & Eng. R. Cas. 385; 55 *Id.* 498.

2. This suit is of the proper nature. In construing the Railroad Commission Act, effect should be given to all of its provisions, if possible. The "other penalty" referred to in § 6813 is that provided for in § § 6812, 6821 and 6822, Kirby's Digest, and this is the only construction which will give effect to all the provisions of the act. That these words do not refer to the double damages allowed by § 6808 is indicated by § 6831. The double damages mentioned is not a penalty within the meaning of § 6813. 41 Ark. 324; 68 Ark. 440; 58 Ark. 407;

70 Ark. 228; 12 Pick. (Mass.), 99; 14 Ore. 55; 58 N. J. L.
273; 101 Fed. 900; 20 Me. 221; 31 Me. 532; 38 Me. 103; 3
App. Cas. 483.

3. Testimony was properly admitted to show number of
cars furnished in other years, as tending to show shortage of
cars due to an insufficient number for ordinary purposes; also
to test the value of witness' testimony to the effect that there
was an unusual demand and that there were sufficient cars for
the ordinary demand of each year, and it was also admissible
to contradict appellant's testimony as to comparative car short-
ages in 1903, 1904 and 1905.

4. Appellant is liable because the fifty-one cars mentioned
in the proceedings were never furnished at any time, as is al-
leged in the complaint and not denied either in answer or proof.
77 Ark. 363.

5. That a carrier's cars are off of its line constitutes no
legal excuse for failure to furnish cars to transport goods
offered for shipment. 63 Ark. 326; 79 Ark. 61. A defense
based upon cars loaned out and not returned is against public
policy.

6. The Legislature has power to create a commission with
complete authority. Art. 17, § 10, Amend. No. 4, Const.;
Kirby's Digest, § 6787. The ordinary meaning of the word
"abuses," mentioned in the foregoing section, does not limit it to
rates, and public policy forbids that its meaning be limited to
rates and discriminations. 90 Tex. 340; 6 Phila. 190. Failure
to furnish cars to a shipper is an "abuse." An act creating a
commission to fully regulate railroads is valid. 9 Am. & Eng.
Ry. Cas. 385; 8 *Id.* 613; 116 U. S. 336; 23 Am. & Eng. Enc.
of L. (2 Ed.), 650; 62 Miss. 607; 47 L. R. A. 572.

7. The Railroad Commission Act is remedial in its nature,
and should be liberally construed. 47 L. R. A. 572; 22 Am.
& Eng. Ry. Cas. 499; 26 *Id.* 29; 21 *Id.* 48; 26 Am. & Eng.
Enc. of L. (2 Ed.), 615; *Id.* 661; 103 Fed. 420; Sedgwick on
Construction Stat. & Const. Law, 32, 310. Remedial statutes
may be construed "liberally throughout, notwithstanding the
imposition of penalty for their violation, on the ground that
their primary object was redress, and not punishment." 26 Am.
& Eng. Enc. of L (2 Ed.), 661; 108 Fed. 120; 23 Del. 1; 47
Md. 241; 53 Vt. 516; 91 U. S. 29.

8. The fact that the shipments involved in this case are not interstate shipments disposes of the contention that the order is a restriction on interstate commerce. 16 Am. & Eng. R. Cas. 29.

HILL, C. J. Phillip Reinsch, a dealer in baled hay at Stuttgart, made demand on appellant railroad company for cars during the season running from October 30, 1905, to January 20, 1906, and was furnished some cars; but the railroad company failed to furnish him within those dates fifty-one cars, which were properly demanded for various shipments to be made to different points within the State of Arkansas.

Reinsch filed complaint before the Railroad Commission and on a hearing the Commission found that the company had violated sections 10 and 18 of the act of March 11, 1899, which are sections 6803 and 6813 of Kirby's Digest; and a rule of the Commission, effective August 5, 1907, known as Order 305; and directed the prosecuting attorney to bring suit pursuant to section 6813, Kirby's Digest.

This suit resulted; and, the finding of the Commission making a *prima facie* case against the company under section 6814, Kirby's Digest, the company assumed the burden of excusing itself for failing to furnish the cars in question; the failure was acknowledged.

The first question urged is that the Commission did not have authority to make said Order 305. Aside from its effect in this case, the question is academic, because in section 3 of the act of May 28, 1907, and section 22 of the act of April 19, 1907, express authority may be found for rules on the subject. Nor is the order important in this case. There was no failure to furnish cars within the five days therein fixed, but a failure to furnish at all the cars in question. Section 6803, Kirby's Digest (expressly named in the suit as one violated), requires the carrier to receive, load, unload, transfer, store and deliver all property offered for shipment, at charges not greater than those named in posted schedules. This would undoubtedly include the duty of furnishing cars on proper demand. Section 6804 also requires the furnishing of cars; and section 6808 renders a violation of these requirements a cause of action for damages by the injured shipper. Section 6813 renders the viola-

tion of any of these requirements (and also legal orders of the Commission) cause for incurring the penalty herein sued for. These statutes are merely declaratory of common-law rights (*St. Louis S. W. Ry. Co.* v. *Clay County Gin Co.,* 77 Ark. 357), for which these statutory remedies are provided.

The counsel attack as unreasonable and void Order 305, for the. reasons stated by the Supreme Court of the United States in *Houston & Texas Cent. Rd. Co.* v. *Mayes,* 201 U. S. 321, wherein a statute of Texas, somewhat similar to this order, was under review. As the order is unnecessary to the maintenance of this suit, as the suit is also predicated upon statutes which cover every question in it, a discussion of it would be out of place.

The only other question requiring consideration is whether the undisputed evidence introduced by appellant presented a sufficient excuse for the failure to furnish the cars. The question has given the court much concern, and the cause has been resubmitted for argument upon it; and, after the benefit of additional arguments and briefs, the court has reached its conclusion slowly.

The evidence of appellant (and its evidence was all there was upon this subject) showed that during the time of the failure to furnish the cars in question the railroad company had sufficient equipment to meet the demands of its traffic; that there was on its line no unusual or extraordinary or unprecedented rush of business; but with its own car equipment on its line there was no time when any industry would have suffered from want of cars. In fact, the appellant was shown to have a larger car equipment than the average freight-carrying road; and the failure to furnish cars was wholly due to an inability to regain its cars which were sent to other roads carrying freight from its own line. Over 90 per cent. of the railroads of the United States belong to the American Railway Association, which promulgates rules for a system of interchange of cars among its members. The appellant is one of its members and governed by its rules. The appellant is an originating line, originating about 70 per cent. of its traffic and receiving about 30 per cent. To illustrate its situation: during the month of November, 1905, it had in revenue service 9517 cars, of which it averaged daily

3982 in use on its own lines, 5525 off its line and 2519 foreign cars in use. In other words, a daily balance of exchange of 1473 cars was against it, and its shortage in cars was only about 650 per day. Unless there was an efficient car service exchange and return, it is apparent that an originating road would soon be depleted of its equipment, especially in times of great traffic in the East, as there was within the time in question. In ordinary circumstances, the proper average time for the return of a car is 22 days; during the time in question it was three months or more. The rules of the American Railway Association provided a charge of 25 cents a day for 30 days; after 30 days, and after ten days' notice to the road holding it, then $1 per day was charged. This 25 cents charge was not for revenue, but was fixed as a basis of settlement; the charge after 30 days of $1 a day for each car was a penalty to hurry its return.

The heavy business in the last two or three years before the time in question caused serious drains on appellant and other originating lines. About two years before this time a *per diem* of 20 cents per day per car was put in, and it was increased to 25 cents; and after the time in question in this suit, and owing to the serious effect on originating lines during the season in question, it was increased to 50 cents per day. The system has proved ineffective to return cars for the past two or three years. In times of dull traffic, appellant's cars would be sent back to its lines to stop this charge, and in the short season of moving the crops over the country, when the demand was great everywhere and traffic congested in the East, then the foreign roads preferred paying the *per diem* to returning the cars. It was cheaper to non-originating roads to pay this small charge than to own more equipment.

The general superintendent of appellant says: "In a congested state of traffic, the *per diem* charged would not have any effect in getting the cars returned, for other roads would much rather pay twenty-five cents and keep the cars than to return them." This same official says that it was customary, in order to avoid the penalty, to shift the cars within thirty days to another line where it can remain for another thirty days without other penalty than the twenty-five cents *per diem*. It is one of the rules of interchange of cars that a foreign car must be loaded

and moved only in the direction of home; and, had this rule been observed, appellant would not have had a shortage, but it was habitually disregarded ever since the traffic in the last few years grew heavy.

The evidence indisputably establishes that it is a benefit to the shipping public to interchange cars, and not to refuse to send cars off the line. Broadly stated, this evidence presents this issue: Railroad companies who interchange cars with appellant here failed in their duty to appellant in keeping, instead of returning, its cars, and appellant correspondingly failed in its duty to its shippers, including the complainant in this action. Shall the shipper or the carrier suffer for this default?

It is unquestionably good for the public that the railroads of the United States have a system of interchange of cars, instead of each road hauling to its termini only, and thereby force reloading and reshipment. The inconvenience and expense of such a system would at once condemn it as failing to meet public requirements. It is unquestionably the policy of both State and Federal legislation to facilitate, if not require, an interchange of cars. The most recent illustration of this policy is found in section 17 of the act of April 19, 1907 (Acts 1907, p. 463.) For one railroad company to be an Ishmaelite among its associates would operate disastrously to its shippers. The shippers of Arkansas expect the public carriers to put their cotton to the spinners in New England, and their fruit to the North, and their lumber and coal to the four quarters of the Union without change from consignor to consignee.

The beneficent and useful purpose of car service associations formed to facilitate the interchange and movement of cars is well stated in *New Orleans & N. E. Rd. Co.* v. *George,* 82 Miss. 710; and the same court, in a thoughtful and well considered decision, held that a car service association was not a combination in restraint of trade and obnoxious to the anti-trust statutes. *Yazoo & M. V. Ry. Co.* v. *Searles,* 68 L. R. A. 715. The Kentucky court says what the carriers may lawfully do for themselves they may do through a common agent, and the reasonable rules of a car service association are enforceable. *Ky. Wagon Mfg. Co.* v. *Ohio & M. Ry. Co.,* 32 S. W. 596. The result of these and other decisions, as summed up in an

excellent text book, is that these associations are lawful, and their rules and regulations, *when reasonable,* will be upheld. 2 Hutchinson on Carriers (3 Ed.), § 861. Mr. Elliott says that such associations, formed for the purpose of making and enforcing reasonable regulations to facilitate business and secure the prompt loading, unloading and return of cars, can not be held illegal upon the ground that the constituent companies by becoming members surrender their corporate functions and control to the association. 4 Elliott on Railroads, § 1568.

The right of carriers to engage in such associations and to enforce reasonable rules is well stated by the Virginia court in *Norfolk & W. Ry.* v. *Adams,* 22 L. R. A. 530; but in sustaining the reasonableness of the rule in that case the court said: "The railroad company as a common carrier is bound to furnish cars for transportation of freight; and they must have control over their cars in order to perform their duties to the public."

The Kentucky Court, in *Newport News M. V. R. Co.* v. *Reed,* 10 Ky. L. Rep. 1020, referred to in note to 43 L. R. A. 227, said: "To allow that it (the carrier) may be excused for failure to furnish cars by showing that it allowed its cars to be taken to other roads beyond the power to control them would be to allow that it might fail to supply itself with sufficient facilities to transact its business on its own line. * * * Means not under the control of the carrier are just as hurtful as means not provided."

The evidence here shows that the appellant company lost control over a majority of its cars, knowing that the rules for their return were insufficient to insure their return. Experience for the past two or three years had demonstrated that the rules for return of cars were insufficient. At the time the cars were needed to move the crops, they were in the East earning less than interest and wear; and when they could be spared by appellant and probably bring in a small revenue from demurrage charges elsewhere, they were returned home. The system of interchange of cars which appellant suffered to prevail, as controlling its car service, had broken down completely; its rules were habitually disregarded, and the return of cars within a reasonable time not produced; and yet it is offered as the excuse

for a failure to comply with its duties to the public. This system caused the railroad company to lose control of its equipment, and a continuance of its inefficient service is an abdication of its corporate functions to a voluntary association irresponsible for losses to its patrons and probably irresponsive to the just demands of the appellant company itself. ° It may be better for the appellant to suffer these ills than to sail under a black flag and refuse to send its cars beyond its line; that is not a question for the court. Until the appellant carrier shows reasonable rules and regulations for the interchange of cars, it can not avail itself of these rules of interchange as causing and excusing its default to the public, for the rules here shown have proved unreasonable and inefficient before this default occurred.

Judgment affirmed.