MISSOURI & NORTH ARKANSAS RAILROAD COMPANY *v.* SNEED.

Opinion delivered February 10, 1908.

1. CARRIER—DUTY TO TRANSPORT PROMPTLY.—Where a carrier is sued for failure to transport promptly live stock tendered for shipment, it is no defense that it had no stock cars and was wholly dependent on another carrier to furnish such cars, unless it appears that reasonable facilities had been provided for the procurement of cars from another carrier which had proved insufficient on account of an unprecedented and unexpected emergency. (Page 298.)

2. SAME—FAILURE TO TRANSPORT LIVESTOCK—DISEASED CONDITION—In a suit against a carrier to recover damages for delay in shipping hogs to another State, it is no defense that the hogs had cholera, and that by the laws of that State and of the United States it was illegal to ship into that State hogs affected with cholera if the diseased condition of the hogs was brought about by the carrier's delay in shipping the hogs. (Page 299.)

3. SAME—LIMITATION OF LIABILITY.—A carrier has no right, at the time of accepting property for shipment, to impose upon the shipper a contract exempting it from liability for damages already accrued on account of its failure to make prompt shipment. (Page 299.)

4. APPEAL—HARMLESS ERROR.—Where a contract offered in evidence was inadmissible, a remark by the court that the contract was not fairly made was not prejudicial. (Page 299.)

5. CARRIER—STIPULATION FOR NOTICE OF DAMAGES—PRE-EXISTING DAMAGES.— Stipulations in a contract for the shipment of livestock, requiring that

the shipper shall give notice of damages thereto before removal of the stock are inapplicable to damages which had accrued before the contract was executed. (Page 299.)

Appeal from Carroll Circuit Court; *J. S. Maples,* Judge; affirmed.

*Crump, Mitchell & Trimble,* for appellant.

1.    An unexpected and unprecedented demand for cars is a good defense to an action for failure to furnish them. This is alleged in the 4th paragraph of the answer, and its truth is admitted by the demurrer. It was error to sustain the demurrer to that paragraph. 77 Ark. 337.

2.    It was also error to sustain the demurrer to the 9th paragraph. It is a violation of law to ship hogs diseased with cholera into or through Missouri, and this is admitted by the demurrer. If the parties were *in pari delicto,* the courts will aid neither. 2 Beach on Contracts, § 1431.

3.    Appellant should have been permitted to introduce in evidence the contract with the appellee. The court's declaration that "it was not fairly made" was an invasion of the province of the jury. 82 Ark. 562.

The notice provided for in the 11th paragraph of the contract was not given as is shown by appellee's own testimony. The exclusion of the contract was therefore necessarily prejudicial. 82 Ark. 339, 353; 82 Ark. 469; 83 Ark. 502, and cases cited.

*James & Fuller,* for appellee.

The demurrer to the 4th paragraph was properly sustained. It is both a statutory and common-law duty of carriers to provide and furnish sufficient facilities for the prompt transportation of freight and passengers. Kirby's Dig. § 6804; 64 Ark. 279; 3 Interstate Com. Rep. 594; Hutchinson on Car. § 292; 4 Elliott on Railroads, § 470; 2 Rorer on Railroads, 1221; 77 Ark. 362.

2.    No one can take advantage of his own wrong, is the doctrine that applies in this case, and the demurrer to the 9th paragraph was properly sustained. If the diseased condition of the hogs resulted from appellant's failure to furnish cars, it is in no position to escape responsibility for its own misconduct.

47 N. J. Eq. 569; 115 N. Y. 506; 117 U. S. 599; 47 N. W. 700; Broom's Legal Maxims, 352; Story, Eq. Jur. § 300; 39 Pac. 207; 2 Pomeroy, Eq. Jur. § 942.

3. The contract sought to be introduced was not executed until after the damage had accrued. Moreover, the evidence is undisputed that the agent at Alpena Pass had only one rate, the one that was finally entered into. To be effective, a special contract of this nature must be just and reasonable and fairly entered into and obtained; and whether or not these require- ments have been complied with is to be determined by the facts and circumstances affecting each case. 12 S. W. 1018; 57 Ark. 117. The contract cannot be made to relate back to cover damages sustained prior to its execution.   83 Ark. 502; 82 Ark. 353; 68 Ark. 218; 79 Ark. 470. The damages having been sustained prior to the execution of the contract, it was not neces- sary to give the notice required by the 11th paragraph thereof. Cases cited *supra*.

McCulloch, J.   This is an action to recover damages suf- fered by reason of the failure of the railroad company to furnish a car for a shipment of live stock from Alpena Pass, a station on its line of railroad, to St. Louis, Mo.   It is alleged in the complaint that on the 2d day of October, 1906, plaintiff made demand upon defendant's agent at the station named above for a stock car for a shipment of hogs, to be furnished on the 6th day of October; that, on the promise of the agent to furnish the car, plaintiff drove 224 hogs to the station, and tendered them for shipment, and placed them in stock pens or yards kept at that place by the company for the reception of stock for ship- ment; that the defendant neglected and refused to furnish the car until the 3d day of November, plaintiff in the meantime having made daily demand for the car; that, by reason of the failure to furnish the car for shipment of the hogs, plaintiff sustained damage in the sum of $789.30, as follows: for thirty- eight head of hogs that died of cholera, contracted in the pens while awaiting shipment, by reason of close confinement, twenty- eight head of which died before shipment and ten while in transit; for depreciation in market value during the period of delay of the hogs which survived; for loss of weight caused by

the delay; and for expense of keeping the hogs while awaiting shipment.

Defendant filed its answer, admitting the demand for the car on the day named and the tender of the hogs for shipment and the failure to furnish the car until the 3d day of November. As reason for failure to deliver the car at an earlier date, it is alleged in the answer that the defendant was engaged in interstate traffic, and that at the time covered by the period of delay there was an unprecedented and unexpected demand for cars, which prevented it from furnishing cars to the plaintiff at an earlier date. The answer also sets forth the fact that the hogs were shipped under a contract or bill of lading limiting the liability of the company, and providing that the shipper should give notice of claim of damages immediately upon arrival of consignment at the place of destination.

The answer also alleged that the plaintiff was guilty of negligence in placing the hogs in close confinement in the stock pen and keeping them there subject to disease caused by other hogs having been kept there.

The answer also contains the following paragraphs, to which the court sustained a demurrer, and exceptions to the rulings were duly noted:

"4. The defendant, further answering, says that up to the 14th day of June, 1906, it held no interest whatever in said railroad, but that at that time entire interest of the St. Louis & North Arkansas Railroad Company, by an order and decree of the United States Circuit Court for the Harrison Division of the Western District of Arkansas, was by W. F. Mitchell, as special commissioner in chancery, in said court, sold and conveyed to John Scullin and others, committee, and the same was transferred to the said committee, and afterwards by said committee transferred to the said defendant, and it says that at the time of its acquiring said railroad there was not a livestock car owned by it, and that this defendant, when it acquired the property of said St. Louis & North Arkansas Railroad Company, did not receive from it a single car of any kind or character. It further states that it has not to the present time been able to procure any cars of its own, and has been wholly dependent on the Frisco Railroad to furnish its stock cars, and that, by reason

of the unprecedented demand for cars as aforesaid, which was general west of the Mississippi River, the said Frisco Railroad was unable to furnish it cars to accommodate its patrons when cars for the shipment of live stock were demanded by them, and that for these reasons and none other the defendant failed to furnish the car as aforesaid.

"5. The defendant, further answering, says that the plaintiff ought not to maintain this action because it says that at the time the said plaintiff made said shipment of hogs this defendant had two rates on livestock, one being a reduced rate by which the company limited its liabilities, and the other being a regular rate, by which it did not limit its liability, and the plaintiff elected to take the lesser rate by which the company limited its liabilty as aforesaid, and by the terms of said contract, which was in writing, the said plaintiff released the said defendant from all damages on account of its failure to furnish cars at the time aforesaid, for which it had demanded them to be furnished, and that he waived and barred any and all causes of action whatever that had at that time accrued to said shipper by any written or verbal contract made prior to the execution of the contract aforesaid.

"8. Defendant, further answering, says that the plaintiff ought not to maintain his said action because he says that the shipment made by him was a shipment made in violation of the law in this, that it is a violation of the statutes of the United States to ship from one State to another State of the United States when they or any of them has what is known as the cholera, and this is shown to be the case by the allegations in the complaint of the plaintiff herein.

"9. The defendant, further answering herein, says that the plaintiff ought not to maintain this action because it says that the shipment alleged in the complaint was a shipment made into and through the State of Missouri, and that, under and by virtue of the statutes of the State of Missouri, it is and was at the time a violation of the law for any person to ship into or through said State of Missouri hogs affected with cholera, which plaintiff by his complaint herein shows to have been the fact as to the hogs mentioned in the complaint."

The trial before a jury resulted in a verdict in favor of the

plaintiff for the sum of $789 damages, and the defendant appealed.

The court did not err in sustaining the demurrer to the paragraphs of the answer copied above. A preceding paragraph of the answer, wherein the unexpected and unprecedented demand for cars was pleaded as an excuse for failing to furnish the car to the plaintiff, set forth a sufficient defense, which, if established by the evidence, would have prevented a recovery. The material facts set forth in paragraph 4 were embraced in the preceding paragraph, just mentioned. The additional facts set forth in paragraph 4, that the defendant had no stock cars at the time of the sale of the road, and that it was wholly dependent on the Frisco Railroad to furnish cars, offered no defense to this action. It was the duty of the defendant as a common carrier to furnish reasonable facilities for the transportation of commodities along its line. The fact that it had no cars at the time of its purchase of the road, or the fact that another company had failed to supply its cars, is not a sufficient answer to this requirement, unless it be shown that reasonable facilities had been provided for the procurement of cars from another company, which had proved insufficient on account of the unprecedented and unexpected emergency. The subject is fully covered by the following statement from Mr. Hutchinson in his work on Carriers, vol. 2, § 495:

"The first duty of the common carrier who holds himself out to the public as ready to engage in the carrying business is, of course, to provide himself with reasonable facilities and appliances for the transportation of such goods as he holds himself out as ready to undertake to carry. He must put himself in a situation to be at least able to transport an amount of freight of the kind which he proposes to carry equal to that which may be ordinarily expected to seek transportation upon his route; for, while the law will sometimes excuse him for delay in the transportation, and even for a refusal to accept the goods which may be offered for carriage, when there occurs an unprecedented and unexpected press of business, it will not do so when his failure or refusal results from his not having provided himself with the means of present transportation for all who may apply in the regular and expected course of business."

The same doctrine has been announced by this court in repeated decisions. *St. Louis Southwestern Ry. Co.* v. *Clay County Gin Co., 77* Ark. 357; *St. Louis Southwestern Ry. Co.* v. *State, post p.* 311; *Little Rock & F. S. R. Co.* v. *Oppenheimer,* 64 Ark. 271.

The 8th and 9th paragraphs of the answer, to which the court sustained demurrer, offered no valid defense, for the reason that the complaint alleges that the injury to the stock occurred before the shipment was actually made. If the injury occurred by reason of the delay before shipment, as alleged in the complaint, then it was no defense to say that the intended shipment became a violation of law by reason of the diseased condition of the hogs brought about by the delay to provide a car.

Learned counsel for defendant, in their abstract and brief, do not furnish us with any statement of the evidence upon which the case was tried, nor the instructions upon which the case was submitted to the jury. We must therefore assume that the verdict was correct, and was supported by sufficient evidence as to the ability of the defendant to furnish cars.

Error of the court is assigned in its refusal to allow the defendant to introduce the contract showing a restriction upon its liability, and also in a remark made by the court in the presence of the jury to the effect that the contract was not fairly made. As we have already shown, the damage to the stock occurred before the contract was entered into, and had no bearing upon the case. The defendant had no right at the time of the shipment to impose upon the shipper a contract exempting it from liability for damage which had already occurred. *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 353.

For this reason, too, the court properly sustained demurrer to the paragraph of the answer setting up the restriction in the contract as a defense.

Nor was there any prejudicial error in the remarks of the court concerning the validity of the contract. Since the contract was inapplicable, and was properly excluded from the jury, the unfavorable comment of the court thereon was immaterial and not prejudicial.

Nor was there any error in the ruling of the court ex-

cluding from the jury that clause of the contract which required the plaintiff to give notice of his damage before removal of the stock. That clause of the contract was also inapplicable as to damage which had already accrued when the contract was executed. *St. Louis & S. F. Rd. Co.* v. *Burgin,* 83 Ark. 502.

Judgment affirmed.