OLIVER *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered March 1, 1909.

1. CARRIERS—DEMURRAGE ACT—VALIDITY.—Acts of 1907, c. 193, entitled "An act to regulate freight transportation by railroad companies doing business in the State of Arkansas," is unconstitutional in so far as it undertakes to regulate interstate business, but is not for that reason invalid so far as it relates to intrastate business. (Page 467.)

2. SAME—CONSTRUCTION OF DEMURRAGE ACT.—Act of 1907, c. 193, imposing a penalty upon railroad companies for failure to furnish cars to ˙shippers within a fixed time after application is made for same, should not be construed to impose an absolute liability in all cases where the cars are not furnished within the required time, but to establish merely a *prima facie* breach of duty, with a right in the railroad company to set up such defense as will excuse or justify the failure. (Page 468.)

3. SAME—DUTY TO FURNISH CARS.—Except in extraordinary and unusual emergencies which cannot reasonably be anticipated, it is the duty of railroad companies to equip themselves with sufficient cars to supply the demands for shipments, both inter and intrastate, and a failure to furnish all cars demanded under other circumstances will not be excused. (Page 470.)

4. STATUTES—SEPARABILITY OF VALID AND INVALID PORTIONS.—In determining whether a statute unconstitutional in part is enforcible as to the residue, the test is whether, after striking out the unconstitutional portion, the remainder of the act is sufficient for practical working purposes. (Page 470.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield;* Judge; reversed.

Action by R. H. Oliver & Son and another against the Chicago, Rock Island & Pacific Railway Company. A demurrer to the complaint was sustained, and plaintiffs R. H. Oliver & Son have appealed.

Act 193 of the Acts 1907 is entitled "An act to regulate freight transportation by railroad companies doing business in the State of Arkansas."

Section 1 requires railroad companies to furnish cars within six days of the filing of an application therefore by shippers, and provides that, for a failure to comply with this section of the act, the railroad company so offending shall forfeit and pay to the shipper applying, the sum of $5 per car per day, or a fraction

of a day's delay after the expiration of free time. The requirement to furnish cars upon application is absolute and unconditional.

Section 17 of the act contains the following clause: "Interstate railroads shall furnish cars on application for interstate shipments the same in all respects as other cars are to be furnished by intrastate railroads under the provisions of this act."

*J. H. Harrod,* for appellants.

The act is valid as applied to intrastate business, notwithstanding its invalidity as to interstate business. 46 Ark. 312.

*Buzbee & Hicks,* for appellee.

Appellants concede that the act is invalid as to interstate business; but the whole act is invalid. Its provisions are so connected in subject-matter, so dependent on each other and operate together for the same purpose, "that it cannot be presumed the Legislature would have passed the one without the other." Cooley on Const. Lim. 178; 162 Fed. 693; 201 U. S. 321; 203 U. S. 514; 100 U. S. 82, 99; 207 U. S. 463; 147 Fed. 419; 75 Ark. 542; 68 Mass. 84; 62 Tex. 630; 5 W. Va. 515; 13 Wis. 398.

N. W. NORTON, Special Judge. When disposed of in the lower court, the complaint stood as one for the recovery of the penalty of five dollars per day for failure to furnish cars, under act 193, approved April 19, 1907. To this complaint a demurrer was interposed. The record discloses that the purpose for which the cars were demanded was the transportation of wood from Galloway to Little Rock. It is conceded that the cars were wanted for intrastate business. It is also conceded by counsel that the legislation in question is unconstitutional and void with reference to interstate business. Upon this point we express no opinion.

Treating it for the purpose of this case as void as to interstate business, the question is, must it be held void with reference to intrastate business also?

Federal control of interstate commerce is not more plenary than the State's control of domestic business; in fact, it is even less so in a particular not necessary to the decision of this case—that is, that while Federal control of interstate commerce may be somewhat affected by the police regulations of a State, there is

probably no way in which the State's regulation of domestic commerce can be qualified, except as it may be done by provisions of the State's Constitution, or those higher rights of property which are superior to constitutional sanction.

At first view, there seems to be ample room for confusion and conflict between Federal and State laws dealing with commercial subjects, and many adjudications show this to be true. The difficulty, however, when present, is in the nature of the case, or in the nature of the legislation. When, as in this case, the controversy is connected with the shipment of goods, the difficulty can not arise, for every shipment will be to a point within the State or to a point without the State, and consequently one for the application of the Federal law, or one free from its contact. It seems that there could, as to domestic business, be no objection to the continued enforcement within a State of a statute broad enough in its terms to include interstate business. To the extent that it contemplated, or in its operation effected, any regulation of interstate business, it would be void; but that would be the limit of its invalidity, and in all other matters it would stand to be enforced.

This view would seem to be reasonable, and that it is the view of the Supreme Court of the United States, can clearly be gathered from the cases of *Central of Georgia Railway Company* v. *Murphey,* 196 U. S. 194, and *Houston & Texas Central Railroad* v. *Mayes,* 201 U. S. 321. In this last case we find the following pertinent statement: "As the power to build and operate railways, and to acquire land by condemnation, usually rests upon State authority, the Legislature may annex such conditions as they please with regard to *intrastate* transportation, and such rules regarding *interstate* commerce as are not inconsistent with the general right of such commerce to be free and unobstructed."

It is conceivable that a State regulation of domestic commerce could, in its operation, impair the usefulness of common carriers as to interstate business. There is, however, nothing in the act under consideration to prompt us to say that its enforcement as a State regulation would necessarily have such effect.

It is next contended that the act is unconstitutional because its requirement that cars be furnished is absolute and uncondi-

tional; that is, it does not mention anything that would justify or excuse the failure. In support of this contention, we are referred to the case of *Houston & Texas Central Railroad* v. *Mayes, supra*. We cannot accept it as controlling. The Texas statute there involved, like the one under investigation, required the cars to be furnished; but, unlike the one here in question, it had a proviso as follows: "That the provisions of this law shall not apply in cases of strikes or other public calamities." This provision could well bring in for application the doctrine that the exception strengthens the rule, and that the statute, by enumerating these excuses, intended to exclude all others. But the stronger reason for refusing the application of that case to this lies in fact that the Supreme Court of the United States there refused enforcement upon the ground that the requirement that cars be furnished transcended the right of the State, through its police power, to burden interstate commerce. This, it will be seen, is a reason without force as to intrastate business.

In *St. Louis, I. M. & S. Ry. Co.* v. *Hampton,* 162 Fed. 693, there is nothing to indicate that it was with reference to intrastate business.

Dealing as we do with intrastate business, the question becomes one to be determined by the law of the State.

Must the act be held unenforceable as a State law for the reason that it does not upon its face expressly provide for reasonable defenses to be interposed when actions may be brought under it? The whole law is not in the act of the Legislature; it is partly there, partly in the Constitution, and partly in the higher rights of property that the courts will always protect. The demurrer raises the question of the legal sufficiency of the complaint under law—that is, under the whole law. The question is not new. An act of February 3, 1875, in its first section (Kirby's Digest, § 6773), provided that "all railroads which are now or may hereafter be built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State." This enactment provided for no defenses, but it was construed by the court in a way that let in all proper defenses, and was given the effect of making railroads *prima facie* liable only. *Little Rock & Ft. S. Ry. Co.* v. *Payne,* 33 Ark. 816. The

principle has been familiar in the jurisprudence of this State for a generation, and we hold it applicable in this case.

The failure to furnish cars under the terms of the act under investigation will establish *prima facie* a breach of duty on the part of the railroad companies. This will not preclude their right to set up such defense as will excuse or justify the failure. That a fair division of cars with interstate business made it impossible to answer all demands made for cars for intrastate business would apparently be within the limit of proper defenses in cases of demands too unusual to be foreseen; and, viewed in this way, the act is relieved of the imputation of burdening interstate commerce. Except in cases of extraordinary and unusual emergencies which cannot reasonably be anticipated by railroad companies, it is their duty to equip themselves with sufficient cars to supply the demands for shipments, both interstate and intrastate, and a failure to furnish all cars demanded under other circumstances would not be excused. *Missouri & N. A. Rd. Co.* v. *Sneed,* 85 Ark. 293; *St. Louis S. W. Ry. Co.* v. *State,* 85 Ark. 311; 2 Hutchinson on Carriers, § 495.

Another contention is, that the legislation, being void as to interstate business, must be void for all purposes, upon the ground that the enactment is indivisible.

In cases where legislative acts are assailed as unconstitutional, it is probable that the divisibility of the statutes has been given more prominence than it is entitled to. In a sense it may amount to divisibility at last, but apparently the test should be the sufficiency for practical working purposes of that portion of the act remaining after the provisions of the Constitution have been applied. This would seem to be right, for it gives effect to the legislative intent, qualified by the superior force of the constitutional intent, and it gives the citizen (individual or corporation) the benefit of the Constitution, which is all that can be asked. The spirit of our adjudications is in harmony with this view; and the practice of the court, which we have no desire to change, has been to give some force and effect to legislative action, even when unable under the Constitution to give all the force and effect the language of the act would require. An apt illustration is the treatment given the legislative provision that tax deeds should be conclusive evidence of the truth of their re-

citals. There was no way to say the provision was divisible, for it was a single idea. The court refused to enforce it, saying that the truth could not be concluded in that way; but the tax deed was allowed to have the effect of *prima facie* establishing the truth of its recitals, and thereby the legislative intent was given some effect. *Cairo & Fulton Rd. Co.* v. *Parks,* 32 Ark. 131. It is not necessary to gather all of our adjudications consistent with this view. Some of them, with varying facts, are: *State* v. *Marsh,* 37 Ark. 356; *State* v. *Deschamp,* 53 Ark. 490; *Fones Hdw. Co.* v. *Erb,* 54 Ark. 657; *Morrison* v. *State,* 40 Ark. 448; *Ry. Co.* v. *State,* 56 Ark. 166; *Little Rock & Ft. S. Ry. Co.* v. *Worthen,* 46 Ark. 312; *Leep* v. *Ry. Co.,* 58 Ark. 407; *Hammond Pkg. Co.* v. *State,* 81 Ark. 519; *Cairo & Fulton Rd. Co.* v. *Parks,* 32 Ark. 131; *McGehee* v. *Mathis,* 21 Ark. 40.

From these cases and others, it is plain that in this State legislative acts will be enforced, though in some parts unconstitional, and regardless whether a line of cleavage can be pointed out or not except such as results from an application of the provisions of the Constitution.

But, if the rule for this State was otherwise, would it avail the appellee? Not if we are correct in our first declaration that because of the divisible nature of the subject-matter—into domestic and interstate business—the act, as a whole, may be valid as to one and void as to the other.

The demurrer should have been overruled. The cause is reversed.

BATTLE and WOOD, JJ., dissenting.