ALLEN *v.* LANGSTON, SHERIFF.

4-8957                                          224 S. W. 2d 377

Opinion delivered November 14, 1949.

---

[2] *Holmes* v. *Holmes*, 186 Ark. 251, 53 S. W. 2d 226; *Boniface* v. *Boniface*, 179 Ark. 738, 17 S. W. 2d 897; *Green* v. *Green*, 168 Ark. 937, 272 S. W. 655.

*John C. Sheffield* and *Burke & Burke,* for appellant.

*Daggett & Daggett,* for appellee.

HOLT, J. November 2, 1948, the electorate of Lee County, following the provisions of Constitutional Amendment No. 7 (Initiative and Referendum), adopted Initiated Act No. 2 which authorized the levy by the Quorum Court of a tax on the vehicles described in said act. Thereafter, the Quorum Court of said county undertook to levy the tax provided by the act.

December 28, 1948, appellants brought the present suit to enjoin the enforcing of the act and the collection of the tax provided therein, primarily on the grounds that the order of the Quorum Court undertaking to levy, and authorizing the collection of the tax, was void and that the Initiated Act in question was unconstitutional and void.

January 11, 1949, Brinkley-Marianna Bus Line, Inc. intervened. Answers were filed and on January 17, 1949, the cause was submitted and a decree rendered dismissing the appellants' complaint and the intervention for want of equity, but impounding all funds collected by appellee under the act pending appeal. This appeal followed.

By stipulation, the issues presented here are: (1) The sufficiency of the ballot title of Act No. 2, (2) The constitutionality of the Act, (3) The levy of the tax, and (4) The reasonableness of the rates.

Since we have reached the conclusion that the Act in question is unconstitutional and void, in the circumstances, we find it necessary to consider only the second issue above.

Pertinent provisions of Act 2 are: "Title—Initiated Act No. 2. "An Act to authorize the Quorum Court of Lee County, Arkansas, to levy a privilege tax upon all vehicles customarily maintained and/or operated in Lee County, Arkansas, for the privilege of operating said vehicles upon the county roads: to provide for the collection and expenditure of the revenue derived from such tax, and for other purposes.

"Be it enacted by the people of Lee County, Arkansas:

"I. The Quorum Court of Lee County, Arkansas, is hereby authorized to levy a tax on the privilege of operating vehicles on the public roads of the County, such tax to be according to the following rates and schedules, in words and figures, to-wit: Passenger Cars— $10.00, Trucks (½ to ¾ Ton)—$15.00, Trucks (1 Ton)— $20.00, Trucks (1½ and 2 Ton)—$30.00, Trucks (2½ Ton and larger)—$50.00, Tractor Truck, including Trailer—$50.00, Farm Trailers—$5.00, Tractors—$12.50, Wagons and Buggies—$2.00, Passenger Buses—$75.00. * * *

"II. All revenues derived from the levy and collection of the tax hereinafter authorized to be levied shall be credited to the County Road Fund and shall be used exclusively in the County for the purpose of constructing, maintaining and repairing public roads and bridges in Lee County, Arkansas.

"III. The privilege tax hereby authorized may be levied by the Quorum Court at any regular meeting or any special term which the County Judge, in vacation, may direct to be held after the effective date of this Act. The tax shall be in the form of an annual tax and shall be

levied and adopted by a majority vote of said Quorum Court. The Resolution adopting and levying such tax shall be recorded in the Minutes of the Meeting of the Court, and shall thereafter be held to constitute a valid levy of such privilege tax.''

Section 5 of the Act provides: Every person * * * who shall desire * * * to keep, maintain, and/or customarily operate within the boundaries of Lee County, Arkansas, any such vehicle on the public roads or the County, shall pay the tax, etc.''

Section 6 of the Act provides: ''Every person * * * who shall use or operate any vehicle, as above described, on the public roads of the County * * * without having paid such privilege tax, shall be guilty of a misdemeanor, etc.''

Amendment 7 to our Constitution provides: ''The initiative and referendum powers of the people are hereby further reserved to the legal voters of each municipality and county as to all local, special and municipal legislation of every character in and for their respective municipalities and counties, but no local legislation shall be enacted contrary to the Constitution or any general law of the State, and any general law shall have the effect of repealing any local legislation which is in conflict therewith.''

Our State Legislature in 1929 enacted Act 65, ''An Act to Amend and Codify the Laws Relating to State Highways.'' That act provided: § 75-201 Ark. Stats. (1947), a state license tax on motor vehicles, and Section 23 (c). ''There is hereby levied a privilege tax of 5 cents on each gallon of motor vehicle fuel sold in the State, or purchased for sale in the State for the purpose of propelling any motor vehicle on the public roads or highways in the State. * * * Section 37. It is intended by this statute to impose a tax upon the owners of all motor vehicles using a combustible type of engine, upon the public roads and highways, by requiring them to pay for the privilege thereof, in addition to the usual license fee, the sum of five (5) cents per gallon for the motor vehicle fuel used * * *. * * * Section 61. The

county courts of the respective counties in the State are delegated the power to levy upon all wagons and other vehicles not required to pay a license under this act, which are kept in that county and are operated upon a part of the state highways or county roads, a privilege tax for such use of the public highways, and may levy such tax on a class of vehicles according to the products they are usually engaged in hauling, including wagons, hauling logs, lumber, stave bolts, timber products, ores or any other produce or commodity whatever, and may fix such taxes on one or more classes of such vehicles, or their customary loads, that may be by the respective county court deemed best for the privilege of using the public roads of the county and the wear and tear caused thereto. Such schedule of privilege shall be fixed not oftener than once a year, and shall be payable quarter yearly for the privileges for the ensuing quarter year. * * * Provided, that all vehicles whose gross weight and tonnage is less than 4,500 pounds shall be exempt from the provisions of this Act.''

Section 75-237 Ark. Stats. (1947) (§ 13, Act 134 of 1911) provides: ''No owner of a motor vehicle, who shall have obtained a certificate from the Secretary of State (Commissioner) as hereinbefore provided, shall be required to obtain any other license or permits to use and operate the same, nor shall such owner be required to display upon his motor vehicle any other number than the number of the registration issued by the Secretary of State (Commissioner) * * *.''

Appellants state their position as follows: ''We concede that the legislature has the right to tax privileges in such manner as may be deemed proper, and further, that the Legislature may delegate this taxing power to the County. However, it is the contention of appellants that the Legislature, having levied a tax on the privilege of using the roads of the State, including those of Lee County, has exercised full control over this subject and that the County is without authority to levy a tax on the same privilege. As stated another way, appellants contend that the levy of a privilege tax on the use of the roads of the State by the Legislature pre-

cludes the levy of a privilege tax on the use of the roads of Lee County by the Quorum Court, of Lee County."

We think it clear from the above enactments that the Legislature intended to, and did, levy a tax generally upon the privilege of using the roads of this State by motor propelled vehicles and in so doing fully covered, by general enactment, the field of taxation of the privilege of so using the roads, and did not grant to the counties the right to tax motor vehicles but only reserved to them the right to tax wagons and other vehicles under certain limitations. In other words, the reservoir of power to levy the tax here is in the Legislature and a county is denied this power to tax unless the Legislature first grants to it such power, expressly or by fair implication.

"Under the Initiative and Referendum Amendment (Amendment No. 7) the people of the county could not enact a law contrary to a general law which operated uniformly throughout the State" *Tindall* v. *Searan,* 192 Ark. 173, 90 S. W. 2d 476.

Appellee appears to concede the general, or State wide effect of the law now in force, (quoting from his brief): "It may not be denied that the tax levied by the State under each and every one of the various acts cited by appellants is, beyond doubt or quibble, a privilege tax levied for state revenue purposes, and, therefore, falls wholly within the 'State field'."

The implication and effect of § 61 (§ 75-201-Ark. Stats. 1947) above, as we interpret it, is to deny to counties the right to tax this privilege on motor driven vehicles.

. The construction of this court placed upon our earliest gasoline tax act (Act 606 of 1921) in *Standard Oil Company of Louisiana* v. *Brodie,* 153 Ark. 114, 239 S. W. 753, applies with equal force here. There it was said: "When the interpretation of this statute is approached in conformity with the rules thus stated, (regarding statutory construction) it is easy to discover in the language an intention on the part of the lawmakers

to impose a tax, not on property, but on a privilege, so as to bring the enactment within constitutional limits. The tax is not imposed on the sale or purchase of gasoline, nor on the gasoline itself, nor even on the use of gasoline. On the contrary, the final and essential element in the imposition of the tax is that the gasoline purchased must be used in propelling a certain kind of vehicle over the public highways. In the final analysis of this language it comes down to the point that the thing which is really taxed is the use of the vehicle of the character described upon the public highway, and the extent of the use is measured by the quantity of fuel consumed, and the tax is imposed according to the extent of the use as thus measured."

Following this decision which recognized that a tax on gasoline was a privilege tax levied upon the privilege of using the public roads of the State, Act 65 of 1929, above referred to, was enacted.

Also of significance is Act 63 of 1931 wherein the Legislature again declared, in language similar, in effect, to that used in Act 65 of 1929, that the gasoline tax was a tax on the privilege of using the roads of the State and further provided that: "Section 1 (e). All tax derived from motor vehicle fuel under the provisions of paragraph (c) of this act, after deducting of any refund for motor vehicle fuel used for agricultural, industrial or domestic purposes, shall be divided, five-sixths being deposited in the state treasury to the credit of State Highway Fund and one-sixth being deposited in the state treasury to the credit of a fund to be known as 'County Highway Fund', * * *" and also gave to the counties 12½% of the proceeds of all bonds and notes sold by the State and provided the method of distribution of the "County Highway Fund." All of which points unerringly to the conclusion, as we have indicated, that our Legislature has by general law fully covered the field of taxing the privilege of using the highways of the State by motor vehicles, saving only to the counties the right to tax "wagons and other vehicles" not covered by the General law.

As above noted, before a county would be entitled to tax the privilege sought by Lee County to tax here, the right, so to do, must be first delegated expressly or by fair implication by the Legislature. This the Legislature has not done.

Amendment No. 7 says: "No local legislation shall be enacted contrary to the Constitution or any general law of the State, and any general law shall have the effect of repealing any local legislation which is in conflict therewith." So the people of Lee County were without power to enact Act No. 2, by which they sought, in effect, to tax twice the same privilege of using the public roads of the County by motor vehicles, and which is obviously a local act and contrary to the general law of the State.

Section 75-237 Ark. Stats. (1947) above, was construed by this court in *Helena* v. *Dunlap,* 102 Ark. 131, 143 S. W. 138, as to its general effect and application. In that case, the City of Helena sought to impose a privilege tax on any resident owning and using vehicles of every kind (except bicycles) upon the city streets. We there held that the City was without authority to impose the tax in so far as it applied to motor vehicles, for the reason that the Legislature by general legislation had covered the entire field in so far as motor vehicles were concerned. It was there said: "The later act was evidently intended to cover the whole subject, and its provisions are full and complete in that respect. * * * Motor cars are large, powerful and capable of great speed; and, if carelessly handled, are very dangerous to the travelling public. They can be run a great distance in one day, and it is well known that the owners of automobiles do not confine the use and operation of their cars to the limits of the city or town in which they reside; but frequently drive long distances in the surrounding country and to other cities and towns. On the other hand, it is well known that vehicles drawn by horses or other animals are chiefly used in the city where their owners reside. Therefore the Legislature saw fit to leave to cities of the first class the authority to tax resident owners on the privilege of using vehicles drawn by mus-

cular power, and to provide new and exclusive rules and regulations as to the use and operation of motor vehicles. As to the wisdom and expediency of passing the act, we have no concern. The statute is plain, and was within the power of the Legislature to enact." Section 19-3506 Ark. Stats. (1947), giving cities the right to tax motor vehicles was enacted in 1919 after this decision in 1912, but the principles of law announced in that case apply here.

While the Initiated Act here in question imposes a privilege tax of $2.00 on "wagons and buggies," we hold that this provision must fail along with the other nine separate tax levies in § 1 of the Act above, for the reason that it seems apparent that the people of Lee County had no intention of separating and enforcing the provision as to wagons and buggies in the event the remaining tax on motor vehicles was declared void and of no effect.

In *Oliver* v. *Southern Trust Co.,* 138 Ark. 381, 212 S. W. 77, this court said: "But if its (the statute's) purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them," and in *Oliver & Son* v. *Chicago, Rock Island & Pacific Railway Company,* 89 Ark. 466, 117 S. W. 238, this court said: "The test should be the sufficiency for practical working purposes of that portion of the act remaining after the provisions of the Constitution have been applied."

Accordingly, the decree is reversed and the cause remanded for further proceedings consistent with this opinion.

GEORGE ROSE SMITH, J., concurring. Although I completely agree with Justice HOLT's learned opinion, I should like to add a few lines in an attempt to refute a plausible theory now advanced by the appellee.

This theory is bottomed upon our holding in *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. 2d 779, and later cases upholding county salary acts. In the *Dozier* case the voters of Union County had adopted an initiated salary act. Opponents of the measure contended that it was contrary to a general law of the state, since Act 216 of 1931 had fixed the salaries for the various counties in accordance with existing general and special legislation. We held, however, that Act 216 was not a general law within the meaning of the Initiative and Referendum Amendment. We concluded that the county electorates were free to legislate in local salary matters, even though the General Assembly had by a single statute fixed the salaries for all counties.

The appellee now contends that the effect of the *Dozier* opinion is to vest in cities and counties all legislative power in purely local matters that is otherwise denied to the General Assembly by Amendment 14 to our constitution, which prohibits local or special acts. If this contention is correct, Amendments 7 and 14 together operate to establish in Arkansas a system similar to that generally known as Home Rule. No longer is it necessary for a city or county to base its local legislation only upon authority delegated by the General Assembly; the power exists unless it is denied by general law. A city has, for example, the power to levy an income tax unless a state law prohibits that action.

This theory is wholly untenable. The effect of the Initiative and Referendum Amendment is merely to make the electorate a legislature coordinate with existing legislative bodies. In the case of a state-wide initiated act, the power of the people is co-extensive with that of the General Assembly. But in the case of a local electorate, such as the inhabitants of a city, the power to initiate ordinances is merely co-extensive with that of the city council. There must still be a state statute delegating

authority in local matters before the city or county elec-
tors are permitted to act. This conclusion is inevitable
when one realizes that the initiative and referendum are
intended to go hand in hand. Neither is ordinarily
broader than the other. Yet the power of referendum is
needed only if the local legislative body has been dele-
gated the authority to act in the first instance. So of
the initiative. It may be noted that a contention exactly
like the appellee's has been made and rejected in Oregon,
after whose system of initiative and referendum our
own is modeled. *Carriker* v. *Lake County*, 89 Ore. 240,
171 P. 407, 173 P. 573.

*Dozier* v. *Ragsdale* and other salary act cases pre-
sent a fact situation almost unique. A state law fixing
county salaries is general in the sense that it applies to
all seventy-five counties, but it is local in the sense that
it is tailored to the needs of each particular county. It
is really a combination of seventy-five local acts em-
braced in a single statute. To deny the power of initiated
action in such cases would be to deny the power of refer-
endum in essentially local matters, since a single dis-
satisfied county could not expect the voters as a whole
to reject the statute in a state-wide election. Hence this
exception to the rule requiring delegated authority for
local action—an exception inherent in the very scheme
of the Initiative and Referendum—must be recognized in
cases like *Dozier* v. *Ragsdale,* in which the state statute
is general only because it is fitted to local conditions in
every one of the seventy-five counties. But this excep-
tion cannot be extended to support the theory that cities
and counties now have uncontrolled sovereignty in all
matters of local concern.

MILLWEE and LEFLAR, JJ., join in this opinion.