VALLEY FAMILY PLANNING, a North Dakota nonprofit corporation, on behalf of itself, and all others similarly situated; Shari Doe, individually and on behalf of all other persons similarly situated, Appellees,

v.

The STATE OF NORTH DAKOTA; Arthur A. Link, individually and as Governor of the State of North Dakota; Dr. Jonathan Weisbuch, individually and as State Health Officer; Allen Olson, individually and as Attorney General of the State of North Dakota; Jim Odegaard, individually and as County Attorney of Grand Forks County, their agents, representatives, successors, those acting in concert with them and all others similarly situated, Appellants.

No. 80–1471.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1981.

Decided Oct. 12, 1981.

Rehearing Denied Nov. 10, 1981.

Allen I. Olson, Robert O. Wefald, Attys. Gen., Bismarck, N. D., Rick D. Johnson, Asst. Atty. Gen., argued, Bismarck, N. D., William C. Kelsch, Sp. Asst. Atty. Gen., Mandan, N. D., for appellants.

Larry F. Nordick, Legal Assistance of N. D., Inc., Fargo, N. D., Janet Benshoof, argued, Suzanne M. Lynn, American Civil Liberties Union Foundation, New York City, Steven Pevar, American Civil Liberties Union Foundation, Denver, Colo., for appellees.

Eve W. Paul, Dara Klassel, Planned Parenthood Federation of America, Inc., New

York City, for amici curiae; George Cameron Nixon, Law Student, on brief.

Joel M. Mangel Public Health Div., Dept. of Health and Human Services, Rockville, Md., for Dept. of Health and Human Services.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Plaintiffs Valley Family Planning and Shari Doe, Valley's executive director, brought this civil action challenging the validity of section 2 of North Dakota's "Limitation of Abortion" Act, N.D.Cent.Code § 14–02.3. Section 2 of that Act provides:

No funds of this state or any agency, county, municipality, or any other subdivision thereof and no federal funds passing through the state treasury or a state agency shall be used as family planning funds by any person, public or private agency which performs, refers, or encourages abortion.

Any person who violates the Act is subject to criminal liability. N.D.Cent.Code § 14–02.3–05. The plaintiffs contend that section 14–02.3–02 conflicts with various federal statutes, including Title X of the Public Health Service Act, Title V of the Social Security Act, and Title XIX of the Social Security Act. They further contend that section 14–02.3–02 violates the First and Fourteenth Amendment rights of their personnel and their clients.

The district court concluded that section 14–02.3–02 is compatible with Title X of the Public Health Service Act, but did not address the other statutory claims. The court went on to invalidate the challenged provision, holding that the Act's prohibition of abortion referrals violates the free speech rights of Valley's employees, and that the term "encourage" in the statute is unconstitutionally vague. We affirm the judgment of the district court on statutory grounds.

Valley Family Planning, located in Grand Forks, North Dakota, is a private, nonprofit corporation organized to provide comprehensive family planning services to women in a six-county surrounding area. Valley also operates a clinic for the treatment of sexually transmitted diseases, and provides a nutrition program for women and children.

Valley Family Planning receives family planning monies from three different federal programs. Thirty-three percent of Valley Family Planning's 1980 budget was funded through Title X of the Public Health Service Act, twenty percent under Title V of the Social Security Act, and three to four percent under Title XIX of the Social Security Act.

The remainder of the center's funding comes from patient fees and state "in-kind" matching funds; the North Dakota legislature appropriates no state family planning monies. Patient fees are calculated on an income-based sliding scale. Because over seventy percent of the center's clients fall below one hundred fifty percent of the poverty level, the vast majority of the center's care is provided without charge.

The district court found that Valley Family Planning "neither performs abortions nor encourages its clients to obtain abortions." The staff does advise women with problem pregnancies of their legal options, including abortion. Women are informed of the procedures, risks and costs of abortion, the stage of fetal development, if asked for, and are given the names of physicians in the three-state area who perform abortions. Staff members do not contact abortion-performing physicians on behalf of the client. "Under the plain meaning of the word 'refer,' Valley Family Planning offers abortion referral services to its clients." 489 F.Supp. at 241.

The plaintiffs challenge the prohibition of abortion referrals contained in N.D.Cent. Code § 14–02.3–02 on both statutory and constitutional grounds. They claim, *inter alia*, that this prohibition is inconsistent with Title X of the Public Health Service Act and is therefore invalid under the Supremacy Clause. *See Hagans v. Lavine*, 415 U.S. 528, 533 n.5, 94 S.Ct. 1372, 1377, n.5, 39 L.Ed.2d 577 (1974); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118

(1968); *Page v. Preisser*, 585 F.2d 336, 339–341 (8th Cir. 1978). We necessarily reach this statutory question first and, finding it dispositive, do not pass on the plaintiffs' First and Fourteenth Amendment claims. *See Hagans v. Lavine, supra*, 415 U.S. at 543, 94 S.Ct. at 1382.

Title X of the Public Health Service Act, 42 U.S.C. § 300 *et seq.*, entitled "Population Research and Voluntary Family Planning Programs," authorizes the Secretary of Health, Education and Welfare (now the Secretary of Health and Human Services) to make direct grants to public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects. The Act also provides for grants to state health authorities which have submitted a comprehensive state plan for the provision of family planning services. Valley Family Planning is a subgrantee of Title X funds flowing through the North Dakota State Health Department.

Health and Human Services (HHS) regulations provide that Title X grantees must "[p]rovide for medical services related to family planning * * * *and necessary referral to other medical facilities when medically indicated*," 42 C.F.R. § 59.5(b)(1) (emphasis added). Grantees are also required to "[p]rovide for social services related to family planning, including counseling, referral to and from other social and medical service agencies," 42 C.F.R. § 59(b)(2), and "[p]rovide for coordination and use of referral arrangements with other providers of health care services, local health and welfare departments, hospitals, voluntary agencies, and health services projects supported by other Federal programs." 42 C.F.R. § 59(b)(8).

The import of section 59.5(b)(1) in the abortion context was clarified by an HEW interpretative opinion issued on July 25, 1979:

§ 59.5[(b)(1)] [1] requires referral to a provider who might recommend or provide an abortion in cases where such a referral is necessary because of the patient's medical condition or the condition of the fetus. *For example, cases where continuance of the pregnancy would endanger the mother's life would fall in the latter category.* Hence, while § 59.5[(b)(1)] does not require a project to make referrals to abortion providers in all cases, a project could not—consistent with § 59.5[(b)(1)]—refuse as a matter of policy to make such referrals in *any* case regardless of the medical indications therefor.[2] [Emphases added.]

We properly give great weight to the interpretative opinions of the agency charged with administering the public assistance program at issue. *See Rosado v. Wyman*, 397 U.S. 397, 407, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217–1218, 89 L.Ed. 1700 (1945). Moreover, we are confident that HHS's requirement that Title X grantees provide all medically indicated referrals including, under some circumstances, abortion referrals, comports with congressional intent. The Senate Committee Report on Title X lists as one of the elements of a successful family planning program "[m]edical services, including consultation, examination, prescription, and continuing supervision * * * and referral to other medical services as needed." S.Rep.No.1004, 91st Cong., 2d Sess. 10 (1970). *See Doe v. Pickett*, 480 F.Supp. 1218, 1220 (S.D.W.Va.1979)

---

1. 42 C.F.R. § 59.5(b)(1) was originally codified as section 59.5(d). The pertinent text of the original section 59.5(d) and that of the present section 59.5(b)(1) are identical.

2. The author goes on to note that this interpretation does not conflict with section 1008 of the Family Planning Act, which provides:

> None of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning.

As stated in the interpretive opinion,

> where such a referral is necessary because of medical indications, abortion is not being considered as a method of family planning at all, but rather as a medical treatment possibly required by the patient's condition. As such, it would not come within the scope of § 1008 at all, since that section reaches only cases which relate to the use of abortion "as a method of family planning."

("both Congress and DHEW intended projects receiving Title X grants to provide complete and appropriate family planning services and referrals"). Although Title X does not contain a specific enumeration of what "services" are to be provided by Title X grantees, Congress did define "core services" in a later, related Act aimed at preventing adolescent pregnancies. Grantees under that Act are required to provide "(A) pregnancy testing, maternity counseling, and referral services * * * and (J) referral to other appropriate health services." 42 U.S.C. § 300a–22(4)(A) & (J). We also note that although Congress has recently refused to provide federal funds for the performance of abortions, it has uniformly made exceptions to that rule, particularly when the life of the woman is at stake.[3]

 The conflict between Title X and N.D.Cent.Code § 14–02.3–02 is clear. Even under the most aggravated circumstances, such as where a woman's life would be endangered if she carried the pregnancy to term, the North Dakota provision prohibits Title X grantees from making an abortion referral. This runs afoul of Title X's mandate that comprehensive health care be provided, including referrals to other services when medically indicated. Accordingly, the North Dakota statute is invalid under the Supremacy Clause. *See De Canas v. Bica*, 424 U.S. 351, 357 n.5, 96 S.Ct. 933, 937 n.5, 47 L.Ed.2d 43 (1976); *Hodgson v. Bd. of County Comm'rs*, 614 F.2d 601, 611 (8th Cir. 1980); *T. H. v. Jones*, 425 F.Supp. 873, 880 (D.Utah), *aff'd on statutory grounds*, 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976).

 We are not inclined to cure the invalidity of section 14–02.3–02 by writing in exceptions to its referral prohibition; that would involve this Court in positive legislative enactment clearly beyond its judicial role. *See Roe v. Casey*, 623 F.2d 829, 837 (3rd Cir. 1980). Moreover, it is clear that the North Dakota legislature intended the statutory provision at issue to be without exception. Section 14–0.3–02 was enacted as part of a four-part statute aimed at limiting abortion. The three other sections—prohibiting the use of government funds for abortion performance, restricting the availability of state hospitals for such operations, and prohibiting health insurance companies from covering abortions except by an optional rider—all contain an exception for those cases where "the abortion is necessary to prevent the death of the woman." N.D.Cent.Code § 14–02.3–01,–03,–04. We can reasonably infer that the omission of a similar exception in section 2 was deliberate.

Because of our holding that N.D.Cent. Code § 14–02.3–02 conflicts with Title X, we need not reach plaintiffs' claims based on Titles V and XIX of the Social Security Act. Under the express wording of the North Dakota statute, if Valley Planning makes abortion referrals in those situations where referrals are required by Title X, it would suffer the loss of all family planning monies and its personnel would be subject to criminal penalties. Thus, it would not suffice to invalidate the statute only as it operates against the one source of funds we have considered.

The judgment of the district court is affirmed.

---

**3.** The text of the "Hyde Agreements" prohibiting the expenditure of federal funds for performing abortions has varied. In 1977, the amendment excepted from its reach those situations where "the life of the mother would be endangered if an abortion is not performed." Pub.L.No.94–439, § 209, 90 Stat. 1434 (1976). The 1978 and 1979 amendments allowed federally funded abortions to be performed if the pregnancy resulted from rape or incest, if the life of the mother were endangered, or if "severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term." Pub.L.No.95–480, § 210, 92 Stat. 1586 (1978); Pub.L.No.95–205, § 101, 91 Stat. 1460 (1977). The 1980 and 1981 amendments omitted the exception for severe and long-lasting physical health impairment. Pub. L.No.96–369, § 101(c), 94 Stat. 1352–1353 (1980); Pub.L.No.96–123, § 109, 93 Stat. 926 (1979).