LITTLE ROCK FAMILY PLANNING SERVICES, P.A.; Curtis E. Stover, M.D.; Fayetteville Women's Clinic; Tom Tvedten, M.D., on behalf of themselves and the Medicaid-eligible women of the State of Arkansas to whom they provide health care, Appellees,

v.

Thomas DALTON, Director of the Arkansas Department of Human Services, in his official capacity; Kenny Whitlock, Deputy Director of the Arkansas Division of Economic and Medical Services, in his official capacity; Jim Guy Tucker, Governor of the State of Arkansas in his official capacity, and their successors, Appellants.

G. William ORR, M.D., on behalf of himself and the Medicaid-eligible women seeking abortions he serves; Womens Services, P.C., Appellees,

v.

E. Benjamin NELSON, in his official capacity as Governor of the State of Nebraska; Donald Stenberg, in his official capacity as Attorney General of the State of Nebraska; Mary Dean Harvey, in her official capacity as Director of the Nebraska Department of Social Services, Appellants.

Nos. 94–2885, 94–3903.

United States Court of Appeals, Eighth Circuit.

Submitted April 4, 1995.

Decided July 25, 1995.

**498**

Debby Thetford Nye, Little Rock, AR, argued (Ann Purvis, on the brief), for appellant in 94–2885.

David T. Bydalek, Lincoln, NE, argued (L. Steven Grasz, on the brief), for appellant in 94–3903.

Eve C. Gartner, New York City, argued (Kathryn Kolbert, New York City, and Bettina Brownstein, on the brief), for appellee.

Before McMILLIAN, Circuit Judge,
JOHN R. GIBSON, Senior Circuit Judge,
and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

These cases were consolidated for purposes of appeal. In appeal No. 94–2885EA, Arkansas state officials (the Arkansas defendants) appeal from a final judgment entered in the United States District Court[1] for the Eastern District of Arkansas holding that an amendment to the Arkansas state constitution providing that no public funds will be used to pay for abortions except to save the life of the mother violated the 1994 Hyde Amendment and enjoining its enforcement. *Little Rock Family Planning Services v. Dalton,* 860 F.Supp. 609 (E.D.Ark.1994) *(Dalton).* In appeal No. 94–3903NE, Nebraska state officials (the Nebraska defendants) appeal from a final judgment entered in the United States District Court[2] for the District of Nebraska holding that a Nebraska state regulation providing that no state funds will be used to pay for abortions except to save the life of the mother violated the 1994 Hyde Amendment and enjoining its enforcement. *Orr v. Nelson,* No. 4:CV94–3252 (D.Neb. Nov. 4, 1994) *(Orr).* For reversal the Nebraska defendants argue the plaintiffs' supremacy clause claim is not enforceable under 42 U.S.C. § 1983 and therefore the district court did not have subject matter jurisdiction. The Nebraska and Arkansas defendants argue on the merits that the Nebraska state regulation and the Arkansas state constitutional amendment do not violate the 1994 Hyde Amendment. For the reasons discussed below, we affirm both judgments.

BACKGROUND FACTS

There are no material facts in dispute in either case. The following statement of background facts about the Medicaid program and the Hyde Amendments is taken in large part from the *Dalton* memorandum opinion.

Medicaid is a jointly funded, federal-state program designed to provide medical assistance to the poor. 42 U.S.C. §§ 1396–1396v (Title XIX of the Social Security Act of 1965). Although a state's participation in the Medicaid program is voluntary, "[o]nce a State voluntarily chooses to participate in Medicaid, the State must comply with the requirements of Title XIX and applicable regulations." *Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985). "States choosing to participate in the Medicaid program may elect to provide medical services either to the 'categorically needy' only, or to both the 'categorically needy' and the 'medically needy.'" *Dalton,* 860 F.Supp. at 615. "The 'categorically

---

1. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

2. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

needy' are those who receive financial aid from certain specified federal aid programs; the 'medically needy' are those who do not qualify for some forms of federal assistance but who nonetheless lack the resources to obtain adequate medical care." *Id.* Arkansas and Nebraska provide services to both the categorically needy and the medically needy.

"Participating states must adopt a Medicaid plan explaining the state's eligibility requirements and the services that will be funded; the state plan must gain approval from the federal government." *Id.* Certain categories of medical care must be provided by every state Medicaid program; other categories are optional. Mandatory categories of medical care include inpatient hospital services, outpatient hospital services, other laboratory and x-ray services, skilled nursing facilities, "early and periodic screening, diagnostic and treatment" services for persons under the age of 21, family planning services and supplies, and physicians' services. 42 U.S.C. § 1396d(a). "Abortion falls within several of the mandatory categories, including family planning services, physicians' services, outpatient hospital services, and inpatient hospital services." *Dalton,* 860 F.Supp. at 616. The state plan must cover medical services that a person's physician certifies are "medically necessary." *Id.* The Medicaid statute does not refer expressly to abortion; however, the Medicaid statute "does not identify *any* specific medical procedures, whether they are cesarean sections, transfusions, bypass surgery, or abortions." *Id.* "Because abortion falls within several of these mandated categories [of medical service], a medically necessary abortion is a mandatory covered service." *Id.*

Between 1973 and 1976 Medicaid covered medically necessary abortions. However, in 1976, Congress enacted the Hyde Amendment "prohibit[ing] *federal* reimbursements for abortions except for the categories that Congress declared medically necessary, which at that time included only cases where the 'life of the mother would be endangered if the fetus were carried to term.'" *Id.* at 617 (citation omitted) (emphasis added). "The [Hyde] Amendment does not restrict participating states' use of *state* funds to provide abortions through Medicaid or any other state program, as the states remain free to fund more abortions than those for which federal funds were made available under the Hyde Amendment." *Id.* (citation and footnote omitted) (emphasis added). "A subsequent version of the [Hyde] Amendment expanded the [federal] funding to include victims of rape or incest and 'instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians.'" *Id.* (citation omitted). "The fiscal year 1980 Hyde Amendment deleted the category regarding 'physical health damage' but still included the category for victims of rape or incest." *Id.* However, "[f]rom fiscal years 1982 to 1993 the Hyde Amendment limited medically necessary and thus federally funded abortions to cases where the mother's life was in danger." *Id.*

Then, in late 1993, Congress expanded the Hyde Amendment to include federal funding for abortions in cases of rape or incest as well as to save the life of the mother. The fiscal year 1994 Hyde Amendment provides that "[n]one of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest." The Departments of Labor, Health & Human Services, & Education, & Related Agencies Appropriations Act of 1994, § 509, Pub.L. No. 103–112, 107 Stat. 1082, 1113 (1993). In December 1993 the federal government advised state Medicaid directors that, effective October 1, 1993, state Medicaid plans must cover abortions for victims of rape or incest in addition to abortions necessary to save the life of the mother. Since at least 1982, pursuant to a state regulation, the Nebraska Medicaid plan has covered "abortions only when the life of the mother would be endangered if the fetus were carried to term." Neb. Dep't Pub. Welfare Prog. Manual § 18–004.08. In 1988 the people of the state of Arkansas amended the state constitution to restrict state funding of abortions.

Amendment 68 provides in part that "[n]o public funds will be used to pay for any abortion, except to save the mother's life." The Arkansas Medicaid plan reflects the state constitutional amendment. Arkansas and Nebraska each refused to amend or revise its state Medicaid plan to cover abortions for victims of rape or incest.

THE ARKANSAS CASE—*Little Rock Family Planning Service v. Dalton*

In the Arkansas case the plaintiffs are Little Rock Family Planning Services, a Medicaid provider, which operates a women's health care facility providing reproductive health care services, including abortions, to Medicaid-eligible women in Arkansas, its medical director, Dr. Curtis Stover, a licensed physician who provides medical services, including abortions, to Medicaid-eligible women, some of whom are pregnant as a result of rape or incest, and Fayetteville Women's Clinic and Dr. Tom Tvedten, who provide services similar to those provided by Little Rock Family Planning Services and Dr. Stover. Little Rock Family Planning Services and Dr. Stover sued on their own behalf and on behalf of the Medicaid-eligible women for whom they provide health care services. The defendants are Thomas Dalton, the director of the state department of human services, Kenny Whitlock, the deputy director of the division of the state department of human services that implements the state Medicaid program, and Jim Guy Tucker, the governor of the state of Arkansas, each sued in his official capacity.

The plaintiffs filed an action for declaratory and injunctive relief alleging that the state constitutional amendment was inconsistent with the 1994 Hyde Amendment and thus preempted by federal law under the supremacy clause of the United States Constitution, art. vi, cl. 2. The plaintiffs filed a motion for summary judgment; the parties agreed, and the district court found, that there were no genuine issues of material fact in dispute. The district court, in an extensive memorandum opinion, found that there was an actual case or controversy, 860 F.Supp. at 614, the plaintiffs had standing to assert their rights and the rights of their patients, *id.*, the case was ripe for review, *id.* at 614–15, and, on the merits, that the state constitutional amendment was in conflict with federal Medicaid law, as amended by the 1994 Hyde Amendment, and thus invalid. *Id.* at 617–22. The district court relied upon four circuit court of appeals decisions which specifically held that federal Medicaid law requires states to fund abortions unless federal funding for those abortions is proscribed by the Hyde Amendment as long as the state participates in the Medicaid program. *Id.* at 618, *citing Roe v. Casey,* 623 F.2d 829, 831, 834 (3d Cir.1980) (Pennsylvania law; Hyde Amendment in effect in 1980); *Hodgson v. Board of County Commissioners,* 614 F.2d 601, 611 (8th Cir. 1980) (*Hodgson* ) (Minnesota law); *Zbaraz v. Quern,* 596 F.2d 196, 199 (7th Cir.1979) (Illinois law), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Preterm, Inc. v. Dukakis,* 591 F.2d 121, 126–27 (1st Cir.) (Massachusetts law), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979). The district court also cited several other decisions from other jurisdictions which reached similar results in cases specifically involving the 1994 Hyde Amendment. 860 F.Supp. at 620 (listing cases); *see also Hope Medical Group for Women v. Edwards,* 860 F.Supp. 1149, 1152 (E.D.La.1994) (Louisiana law barring public funds for abortion except to prevent the death of the mother inconsistent with 1994 Hyde Amendment), *stay pending appeal denied,* No. 94–30445 (5th Cir. Aug. 16, 1994), *stay denied,* —— U.S. ——, 115 S.Ct. 1, 129 L.Ed.2d 903 (Scalia, Circuit Justice 1994).

The district court also decided that it could not rewrite the state constitutional amendment in order to preserve its constitutionality, 860 F.Supp. at 622–25, and that the state constitutional amendment was not severable under state law. *Id.* at 625–28. The district court enjoined the enforcement of the state constitutional amendment, as well as the provisions of the state Medicaid plan related to abortion funding that are inconsistent with the Hyde Amendment, for so long as the state accepts federal Medicaid funds. This appeal followed.

THE NEBRASKA CASE—*Orr v. Nelson*

In the Nebraska case the plaintiffs are Womens Services PC, a Medicaid provider,

and its president, Dr. G. William Orr, a licensed physician. Dr. Orr provides medical treatment, including abortions, to Medicaid-eligible women in Nebraska who are pregnant as a result of rape or incest. In July 1994 Dr. Orr submitted a Medicaid claim for an abortion for a woman whose pregnancy was the result of rape; the state department of social services denied the claim on the ground that Medicaid would not reimburse the claim. The defendants are E. Benjamin Nelson, the governor of the state of Nebraska, Donald Stenberg, the state attorney general, and Mary Dean Harvey, the director of the state department of social services, each sued in his or her official capacity. Like the plaintiffs in *Dalton,* the Nebraska plaintiffs filed an action for declaratory and injunctive relief, alleging that the state regulation providing that no state funds will be used to pay for abortions except to save the life of the mother was inconsistent with the 1994 Hyde Amendment and thus preempted by federal law. The plaintiffs filed a motion for summary judgment; the parties agreed, and the district court found, that there were no genuine issues of material fact in dispute. The district court granted the motion for summary judgment in favor of the plaintiffs, holding that the 1994 Hyde Amendment preempts conflicting state law, declared the state regulation was invalid, and permanently enjoined the defendants from enforcing the state regulation. *Orr,* slip op. at 6–8 (citing other Hyde Amendment decisions involving other states, including the *Dalton* case). This appeal followed.[3]

## SUMMARY JUDGMENT

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Insurance Co. v. FDIC,* 968 F.2d 695, 699 (8th Cir.1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police Commissioners,* 920 F.2d 1402, 1405–06 (8th Cir. 1990).

## 42 U.S.C. § 1983 ENFORCEMENT

The Nebraska defendants first argue the plaintiffs' supremacy clause claim is not enforceable under 42 U.S.C. § 1983 and therefore the district court lacked subject matter jurisdiction. The Nebraska defendants argue that *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (*Golden State* ), has been abrogated by the subsequent decision in *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (*Suter* ). The Nebraska defendants also argue that, even if *Golden State* remains valid, the 1994 Hyde Amendment does not impose the "unambiguous mandatory obligation" required to create an enforceable federal right because the 1994 Hyde Amendment is an amendment to an appropriations act, which does not amend the Medicaid statute itself. The Nebraska defendants argue that the 1994 Hyde Amendment merely limits the use of federal funds to reimburse the states and does not impose an affirmative mandate on the states to expend state funds. The district court held that the plaintiffs' supremacy clause claim is enforceable under 42 U.S.C. § 1983. *Orr v. Nelson,* 874 F.Supp. 998, 1001–04 (D.Neb. 1995).

We agree with the district court. This court rejected the abrogation argument in *Arkansas Medical Society v. Reynolds,* 6 F.3d 519 (8th Cir.1993) (*Reynolds*). *Reynolds* concluded that "[f]irst, *Suter* did not create an analytical framework to replace *Golden State.* Second, *Suter* did not over-

---

**3.** Subsequently the district court awarded the plaintiffs attorney's fees and expenses under 42 U.S.C. § 1988 in the amount of $5,456.08. *Orr v. Nelson,* 874 F.Supp. 998 (D.Neb.1995). The appeal of the award of attorney's fees and expenses, No. 95–1555, was argued before the same panel as the appeal on the merits.

rule *Wilder* [*v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (*Wilder*)]. Third, *Suter* placed great emphasis on the fact that rights must be 'unambiguously' conferred to be enforceable. And fourth, *Suter* emphasized that each statute must be examined on its own basis." 6 F.3d at 525; *see also Howe v. Ellenbecker*, 8 F.3d 1258, 1261–63 & n. 5 (8th Cir.1993) (noting that although *Suter* may have weakened earlier precedents, Supreme Court did not overrule *Golden State* and *Wilder*, so the better approach is to use *Wilder* framework, as articulated in *Suter*), *cert. denied*, —— U.S. ——, 114 S.Ct. 1373, 128 L.Ed.2d 49 (1994). The first question, which is basically the first step of the *Golden State* test, has three subparts—first, whether the plaintiff is the intended beneficiary of the statute; second, whether "there is sufficient mandatory language in the statute to create a binding obligation on the state"; and third, "whether the statute's language is too vague and amorphous to enforce a right via § 1983." *Reynolds*, 6 F.3d at 525–27. The second question, which is basically the second step of the *Golden State* test, is whether Congress has foreclosed § 1983 enforcement. *Reynolds*, 6 F.3d at 528.

■ Applying this hybrid test, we agree with the district court that the plaintiffs can enforce the Medicaid statute, as amended by the 1994 Hyde Amendment, through 42 U.S.C. § 1983. 874 F.Supp. at 1003–04. The plaintiffs in both these cases are Medicaid providers and Medicaid recipients; they are the intended beneficiaries of the 1994 Hyde Amendment because the amendment concerns, respectively, reimbursement and medical services. *Reynolds*, 6 F.3d at 526 (Medicaid providers and Medicaid recipients are intended beneficiaries of Medicaid provision). The 1994 Hyde Amendment contains sufficient mandatory language to impose a binding obligation on the states to fund certain abortions. Nor is the language of the Medicaid statute, as amended by the 1994 Hyde Amendment, too vague or amorphous to enforce through 42 U.S.C. § 1983. As discussed below, since 1980, numerous judicial decisions have consistently construed the federal Medicaid statute to *require* participating states to fund medically necessary abortions unless proscribed by the Hyde Amendment. These decisions have also consistently construed the 1994 Hyde Amendment, and the virtually identical 1977 Hyde Amendment, to *require* participating states to fund abortions to save the life of the mother and in cases of rape or incest. Finally, Congress has not foreclosed 42 U.S.C. § 1983 enforcement in the Medicaid statute. *Wilder*, 496 U.S. at 520–23, 110 S.Ct. at 2523–24; *Reynolds*, 6 F.3d at 528.

## MERITS

On the merits in each appeal the defendants argue the district court erred in holding the 1994 Hyde Amendment requires states to fund certain abortions under Medicaid. The Arkansas defendants argue the 1994 Hyde Amendment is an appropriations measure that merely prohibits the use of federal funds for certain medical services. They argue the Hyde Amendment did not substantively amend the Medicaid statute and that if Congress wanted to amend the Medicaid statute to require the states to fund certain abortions, then Congress would have done so. The Nebraska defendants also argue this circuit's Hyde Amendment decisions, *Hodgson* and *Reproductive Health Services v. Freeman*, 614 F.2d 585 (8th Cir.) (*Freeman*), *vacated on other grounds*, 449 U.S. 809, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980), were incorrectly decided and urge the court to reconsider those precedents in light of *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

■ We must decline the defendants' invitation to overrule *Hodgson* and *Freeman*. "One panel of this Court is not at liberty to disregard a precedent handed down by another panel." *Drake v. Scott*, 812 F.2d 395, 400 (8th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

In *Hodgson* this court rejected the defendants' arguments that the Hyde Amendment is merely an appropriations measure that did not substantively amend the Medicaid statute. In *Hodgson* we held that the Hyde Amendment in effect at that time which, like the 1994 Hyde Amendment banned federal funding for abortions except to save the life

of the mother or in cases of rape or incest, "altered Title XIX's requirements, with the result that, as a statutory matter, [the state] need only finance those abortions contemplated by the Hyde Amendment." 614 F.2d at 605; *see also Freeman,* 614 F.2d at 591–92 (noting that *Hodgson* held that Hyde Amendment substantively amended the Medicaid statute). Contrary to the defendants' argument, in *Harris v. McRae* the Supreme Court expressly left the issue open. 448 U.S. at 312 n. 14, 100 S.Ct. at 2685 n. 14. Moreover, we agree with the Tenth Circuit that the Supreme Court's analysis in *Harris v. McRae* supports the plaintiffs' basic premise that "the Hyde Amendment does not affect states' underlying obligations imposed by Title XIX and federal Medicaid regulations" to fund abortions for which federal reimbursement is available. *Hern v. Beye,* 57 F.3d 906, 908–09 (10th Cir.1995) (1994 Hyde Amendment) (Supreme Court in *Harris v. McRae* "construed the Hyde Amendment as indirectly modifying states' obligations under Title XIX").

As noted by the Tenth Circuit in *Hern v. Beye,* 57 F.3d at 909–13, every federal district court to consider the issue, *id.* at 912 (citing district court cases), has held, consistent with the analysis in *Hodgson* and the other circuit courts of appeals decisions, that the 1994 Hyde Amendment bars participating states from denying funding to Medicaid-eligible women for abortions in cases of rape or incest. *See also Edwards v. Hope Medical Group for Women,* — U.S. at ——, 115 S.Ct. at 2 (citing four circuit court decisions, including *Hodgson,* construing prior Hyde Amendment).

In addition, we note that this court in *Freeman* rejected the Nebraska defendants' argument based on *Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), that the Congress which enacted the Medicaid statute could not have intended to require states to fund abortions because at that time (1965) abortions except to save the life of the mother were illegal in most states. 614 F.2d at 590–91 (refusing to read *Beal v. Doe* to permit a state to withhold funding for any service, no matter how medically necessary, that was not legally available in 1965).

■ Finally, we hold in No. 94–2885EA that the district court did not err in invalidating the entire Arkansas state constitutional amendment and in declining to rewrite the amendment to cure the invalidity. Redrafting the amendment or writing in exceptions in order to cure the invalidity presented by the plain meaning of its language would have involved the district court in "positive legislative enactment clearly beyond its judicial role." *Valley Family Planning v. North Dakota,* 661 F.2d 99, 102 (8th Cir.1981). Further, the district court did not err in holding that sections 2 and 3 of Amendment 69 have no function independent of the first section and no practical working purposes. These two sections are mutually connected with and dependent on section 1 and would be without operative effect if allowed to stand by themselves. *Handy Dan Improvement Center, Inc. v. Adams,* 276 Ark. 268, 633 S.W.2d 699 (1982); *Allen v. Langston,* 216 Ark. 77, 224 S.W.2d 377 (1949).

In sum, we hold the Arkansas state constitutional amendment and the Nebraska state regulation prohibiting the use of public funds for abortions except to save the life of the mother violate the federal Medicaid statute, as amended by the 1994 Hyde Amendment, and are therefore invalid under the supremacy clause.

Accordingly, the judgments of the district courts are affirmed.

BOWMAN, Circuit Judge, concurring in part and dissenting in part.

The Supreme Court has held that Title XIX does not require states participating in the Medicaid program to fund abortions that are not certified by physicians as medically necessary. *Beal v. Doe,* 432 U.S. 438, 447, 97 S.Ct. 2366, 2372, 53 L.Ed.2d 464 (1977). The Court also has held that Title XIX does not require participating states to pay for those abortions certified as medically necessary for which Congress, through the Hyde Amendment, has denied federal reimbursement. *Harris v. McRae,* 448 U.S. 297, 311, 100 S.Ct. 2671, 2685, 65 L.Ed.2d 784 (1980). It appears, however, that the Supreme Court has not expressly addressed the precise issue presented in the cases now before us, *i.e.,* whether a participating state may, consistent with Title XIX, withhold funding for abor-

tions certified as medically necessary for which federal reimbursement is available under the Hyde Amendment. *See Williams v. Zbaraz,* 448 U.S. 358, 363 & n. 5, 100 S.Ct. 2694, 2698 & n. 5, 65 L.Ed.2d 831 (1980).

In *Beal,* the Supreme Court recognized that Title XIX gives each participating state "broad discretion," 432 U.S. at 444, 97 S.Ct. at 2370, to determine which medical procedures, among the vast array of those that physicians may certify as medically necessary, the state will fund. Here, the Arkansas and Nebraska defendants argue that this "broad discretion" extends to denying state funding for all abortions except those performed to save the life of the mother. Were we writing on a clean slate, I would be inclined to agree with the defendants that states participating in the Medicaid program are not required to fund abortions merely because Congress, by loosening the strictures of the Hyde Amendment against the expenditure of federal funds for abortions, has chosen to make federal reimbursement available. However, as Judge McMillian's opinion demonstrates, the existing federal decisions, including prior decisions of this Circuit by which the present panel is bound, are to the effect that a state's approach to the public funding of abortions through the Medicaid program cannot be more restrictive than the Hyde Amendment. *See, e.g., Hodgson v. Board of County Comm'rs,* 614 F.2d 601, 611–15 (8th Cir.1980). Faithfulness to the law as it is, rather than as one might think it ought to be, requires us to reject defendants' position to the contrary. I therefore join the Court's opinion to the extent it holds that under the 1994 Hyde Amendment participating states may not refuse to provide funding for abortions certified as medically necessary for Medicaid-eligible women in cases in which the pregnancy is the result of rape or incest.

I do not agree, however, that it was proper for the District Court to enjoin Amendment 68 of the Arkansas Constitution in its entire-

ty.[1] The full text of Amendment 68 is as follows:

### Amend. 68. Abortion.

§ 1. Public funding.

No public funds will be used to pay for any abortion, except to save the mother's life.

§ 2. Public policy.

The policy of Arkansas is to protect the life of every unborn child from conception until birth, to the extent permitted by the Federal Constitution.

§ 3. Effect of amendment.

This amendment will not affect contraceptives or require an appropriation of public funds.

Ark. Const. amend. 68. Neither section 2 nor section 3 would appear to be implicated by the District Court's Medicaid ruling that we here sustain, and section 1 is implicated only insofar as this ruling results in Arkansas's being required, in cases of rape or incest, to use public funds to pay for abortions that are not necessary for purposes of saving the mother's life. To that extent, Amendment 68 must yield to federal law, but the Supremacy Clause can be given its due by measures far less draconian and far less intrusive on the public policy of the state of Arkansas than the drastic remedy that has been imposed here. I believe the question is not, as the District Court thought, whether it had the authority to rewrite Amendment 68, but whether, in order for the federal interest to be fully served, it would be entirely sufficient simply to enjoin the defendants from relying on or enforcing section 1 in cases of medically necessary abortions for Medicaid-eligible women where pregnancy results from rape or incest. An order of this sort, tailored to fit the circumstances of the case, would uphold the supremacy of federal law in the somewhat narrow range of cases in which it trumps state law without running roughshod over the state interest, and would leave

---

1. There is loose talk in the briefs of the parties about the District Court's having declared Amendment 68 null and void. What the court actually did, however, was to enjoin the enforcement of Amendment 68 "in its entirety for so long as the State of Arkansas accepts federal funds pursuant to the Medicaid Act." *Little Rock Family Planning Servs. v. Dalton,* 860 F.Supp.

609, 628 (E.D.Ark.1994). In effect, the District Court has benched Amendment 68, but has not banished it from the game forever. Thus, should Congress again change the Hyde Amendment to its earlier formulation of no federal funds for abortions except to save the life of the mother, the injunction could be lifted, and Amendment 68 once again would be fully enforceable.

Amendment 68 available to be given effect in its many possible applications that are completely consistent with federal law.

As the plaintiffs themselves have emphasized (*see* Brief of Plaintiffs–Appellees at 39–40), what we have in this case is an "as applied" challenge to Amendment 68, not a facial challenge. "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Ada v. Guam Soc'y of Obstetricians and Gynecologists,* — U.S. —, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting from denial of *certiorari* ). Justice Scalia's observation is solidly grounded in the Supreme Court's consistent practice, and applies with at least equal force when a provision of a state constitution is found invalid under the federal Constitution. Except for a limited category of First Amendment free-speech cases involving overbroad statutes, "the rule [is] that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 502, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985). Like the Supreme Court in *Brockett,* I believe that "[t]he case[ ] before us [is] governed by the normal rule that partial, rather than facial, invalidation is the required course." *Id.* at 504, 105 S.Ct. at 2802. The "normal rule" could easily be observed in this case by means of a limited injunction of the kind mentioned in the preceding paragraph. I therefore respectfully dissent from our Court's affirmance in No. 94–2885 of the District Court's order enjoining the enforcement of Amendment 68 in its entirety.