**UNITED STATES of America, Plaintiff,**

v.

**Robert B. FISKE, Jr., Defendant.**

**No. LR-C-96-783.**

United States District Court,
E.D. Arkansas,
Western Division.

Oct. 22, 1996.

David W. Long, U.S. Department of Justice, Civil Division, Washington, DC, G. Randolph Satterfield, Satterfield Law Firm, Little Rock, AR, for plaintiff.

ORDER

WILSON, District Judge.

On October 1, 1996, a complaint was filed on behalf of the United States of America against Robert B. Fiske, Jr. The case was assigned to me by random selection under Rule A–2(a) of the Local Rules of the Eastern and Western Districts of Arkansas. Pending is a Suggestion of Dismissal filed by the Attorney General's Office on behalf of the United States. At the threshold, however, I take up the question of whether I should recuse.

No one has asked me to recuse. The parties in this case are the United States of

America and Robert B. Fiske, Jr. Mr. Fiske was appointed Independent Counsel by the Attorney General of the United States on January 31, 1994. He was replaced by Kenneth W. Starr, Esquire, on August 5, 1994. Mr. G. Randolph Satterfield purports to represent the United States via a *qui tam* action.[1] Mr. Fiske has not yet answered the Complaint, and no lawyer has entered an appearance on his behalf.

In this District, selection of judges at random has long been mandatory. Local Rule A–2 provides:

(a) All civil and criminal actions and proceedings shall be assigned by a random selection process as the judges from time to time direct.

(b) No person shall take any action designed to cause the assignment of any proceeding to a particular judge. The method of assignment shall assure that the identity of the assigned judge will not be disclosed by the Clerk, nor by any member of his staff, nor by any other person, until after filing. It shall also be designed to prevent any litigant from choosing the judge to whom an action or proceeding is to be assigned. Any attempt by an attorney to vary this intent shall constitute grounds for discipline, including disbarment.

The parties are entitled to the judge they draw by random selection, and the judge should not lightly recuse. As a matter of fact, even when a motion to recuse has been filed, "judges are charged with an affirmative duty to probe the legal sufficiency of petitioner's affidavits of prejudice and not to disqualify themselves unnecessarily." *Davis v. C.I.R.*, 734 F.2d 1302, 1303 (8th Cir.1984).

My research reveals that the law of disqualification of trial judges in this Circuit is unsettled and unclear, and the cases appear to be in conflict. It is my belief that circuit courts have, and should have, only limited power to remove a district judge to whom a case has been properly assigned.

Some appellate courts do not hold this view. As Judge Jack B. Weinstein wrote:

Some panels of the federal courts of appeals have recently been ordering that a case on remand be heard by a different district court judge than the one who originally decided the case. This kind of an order is a matter of concern because it represents an unjustified arrogation of power by some judges of the court of appeals and is destructive of the proper relationship between the trial and intermediate appellate courts.

I have never been subject to such an order. My interest in the subject is as a Chief Judge concerned with the morale of trial judges and with the important joint work of the federal trial and appellate courts. To satisfactorily administer justice, we should have a sense of mutual respect and understanding among all judges as well as a clear delineation of roles.

The assumption of power by an appeals panel to control judge selection can only add to the burdens placed on the trial courts, while adversely and unnecessarily lowering their morale. The district courts have carefully designed plans for the division of business among their judges, and interference from above gums up the works. Trial courts operate every day, often with one judge hearing several motions and supervising more than one jury at a time. If trial judges are to decide properly, they need the power granted them by statute to organize their own assignments.

One justification relied on by appeals panels ordering assignment is that this is a power seldom used by the courts of appeal. That excuse hardly answers the argument that the power does not exist.

\* \* \*

Courts more recently have used 28 U.S.C. § 2106, a catchall grant of authority to issue orders in aid of jurisdiction, to make

---

1. The False Claims Act, 31 U.S.C. § 3730(b), allows private parties to file lawsuits on behalf of the United States, under some circumstances.

reassignment an element of the mandate. This power can be explained and justified in a more principled fashion than the courts have used: Reassignment should be a device of the appellate court that meshes with the district judge's duty of recusal. Self-recusal is impractical in the event of systemic and deliberate repeated errors of law. There the court of appeals need not await action by the district judge. Reassignment to avoid bias, however, is a question that statutorily falls first on the district judge.

\* \* \*

The recusal process was created for good reasons. Appellate circumvention of that process can only injure our ability to secure justice. I agree with Judge Richey's ringing conclusion:

> The time has come to implement the mandate of Congress and remand cases to a different judge *only* on the basis of evidence that would require recusal under 28 U.S.C. §§ 144 and 455. Otherwise, we will be opening a "Pandora's Box" for countless baseless attacks upon a defenseless judiciary whose independence is essential to the preservation of this republic.

*Koller v. Richardson–Merrell,* 737 F.2d 1038, [1069] (D.C.Cir.1984) (Richey, J., concurring) (emphasis in original), vacated on other grounds, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). I would add to Judge Richey's remarks that the evidence for recusal must first be presented on motion to the trial judge. *In short, absent repeated deliberate errors warranting the issuance of an extraordinary writ, the appellate panels ought never order reassignment on remand without the statutory recusal process.*

Jack B. Weinstein, *The Limited Power of the Federal Courts of Appeals to Order a Case Reassigned to Another District Judge,* 120 F.R.D. 267–84 (1988) [Emphasis supplied].

It is black letter law that parties must ordinarily make an objection during trial before an error can be asserted on appeal. Fed.R.Civ.P. 46. Time and time again one reads in an appellate decision, "The court will not consider the Appellant's other point, since it was not raised in the trial court."

Absent extreme circumstances, this rule has been followed when appellate courts consider a motion to remove a trial judge. In *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co.,* 722 F.2d 1407 (8th Cir.1984), the Court of Appeals restated this settled rule regarding timeliness of a request for disqualification. When the Oglala Sioux argued for the first time on appeal that the trial judge should have recused himself because he allegedly owned real property in the disputed area, the Court of Appeals declined to consider the issue:

> The Oglala Sioux's suggestion that Judge Bogue should have recused himself is both legally insufficient and untimely [and] should have been raised in the trial court. [W]e believe that a timeliness requirement is appropriate, especially in the case where the Oglala Sioux were aware of the alleged grounds for disqualification at the time the case was assigned to Judge Bogue, but the suggestion for disqualification was not raised until this appeal.

*Id.* at 1414.

In reaching this decision, the Court was considering a motion to recuse bottomed upon 28 U.S.C. § 455(a), which provides:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Thus, the settled principle was that a party aware of alleged grounds for a trial judge's disqualification was obligated to present the motion to that judge. Otherwise, the objection would be waived. The logic behind this rule is apparent. As the Chief Judge of this Circuit, the Honorable Richard S. Arnold wrote:

> At the outset, we note the irony that most of the major parties to this litigation have at some point sought the removal of the trial judge. Not surprisingly, the parties have generally discovered grounds for disqualification at approximately the same time that the district court has ruled for their adversaries on the merits. The recu-

sal statute does not provide a vehicle for parties to shop among judges. Nor does Section 455(a) require recusal every time a judge commits a procedural error or departs from protocol in some way.

*Little Rock School District v. Pulaski County Special School,* 839 F.2d, 1296, 1302 (8th Cir.1988).

In *United States v. Roberts,* 88 F.3d 872 (1996), the Tenth Circuit considered this serious issue carefully. In that case, the Government argued that the presiding judge was personally biased against the prosecution and hostile to the individual Government attorneys. The Government asked that the case be reassigned. The Court stated:

In *O'Rourke v. City of Norman,* 875 F.2d 1465 (10th Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989), we discussed the circumstances under which we could exercise our inherent authority to reassign a case to a different district court judge on remand. We stated:

Ordinarily 28 U.S.C. § 144 and § 455 are invoked at the district court level to effectuate recusal. However, these statutory provisions are not the exclusive route for disqualification. The appellate court's authority to reassign exists apart from the judicial disqualification statutes. However, absent proof of personal bias, we remand to a new judge only under extreme *circumstances.*

*Id.* at 1475 (citations omitted). Since *O'Rourke,* this court has not readily invoked its authority to reassign judges. In *Women's Health Care Services, P.A. v. Operation Rescue Nat'l,* 24 F.3d 107, 110 (10th Cir.1994) (per curiam), we reassigned the case from the judge presiding in a civil case involving an injunction against Operation Rescue for its protests in front of Wichita, Kansas, abortion clinics during the summer of 1991. Our reassignment occurred after we earlier determined the judge abused his discretion by not recusing himself in an earlier related criminal case after his appearance on the ABC news program *Nightline* during the protests to discuss his injunction and its violation by Operation Rescue. *Id.*

\* \* \*

Our extreme reluctance to exercise our inherent authority to reassign a district court judge on remand is not accidental. We are unwilling to do so because of the extraordinary nature of this remedy. Two concerns animate our reassignment decisions. First, as an appellate court, we must always recognize our basic and primary duty to ensure the availability of a fair tribunal and judicial process for all litigants including the government. *Id.* at 1450; *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Second, "[w]e are also mindful that charges of misconduct or prejudice leveled at trial judges 'should not be lightly made and, once made, should not be casually treated by a reviewing court.'" *Mitchell v. Maynard,* 80 F.3d 1433, 1450 (10th Cir. 1996) (quoting *United States v. Gigax,* 605 F.2d 507, 510 (10th Cir.1979) (quoting *United States v. Cardall,* 550 F.2d 604, 606 (10th Cir.1976), *cert. denied,* 434 U.S. 841, 98 S.Ct. 137, 54 L.Ed.2d 105 (1977))).

We believe these competing concerns can be best satisfied by the rule a party should only invoke our inherent authority to reassign a district judge in the most unusual and exceptional circumstances. In most cases, the appropriate procedure will be to file a *motion for recusal* before the district court pursuant to 28 U.S.C. § 144 or § 445. This procedure will still allow us to review a district court's denial of a recusal motion since the established law of this circuit provides mandamus is the appropriate vehicle to challenge such rulings. *Nichols v. Alley,* 71 F.3d 347 (10th Cir. 1995) (per curiam); *Cooley,* 1 F.3d at 996 n. 9 (collecting and cataloguing various courts of appeals cases).

Applying this standard, we conclude the government has failed to demonstrate the extraordinary, exceptional, or unusual nature of this case justifying the exercise of our inherent authority. Our review of the record on appeal reveals no reason why the government could not file a motion for recusal before the district court in the first instance. Under the totality of *circumstances* presented, we decline to exercise our inherent authority to reassign this case

to a different district court judge on remand.

*Roberts,* 88 F.3d at 885.

As noted above, the *Oglala* court held that § 455(a) challenges must be made, if the grounds are known, at the trial level. And, "[o]ne panel of this Court is not at liberty to disregard a precedent handed down by another panel." *Little Rock Family Planning Services, P.A. v. Dalton,* 60 F.3d 497, 502 (8th Cir.1995). Or, as Judge Bowman wrote in his concurring opinion in *Dalton:*

> Were we writing on a clean slate, I would be inclined to agree with defendants that states participating in the Medicaid program are not required to fund abortions merely because Congress, by loosening the strictures of the Hyde Amendment against the expenditure of federal funds for abortions, has chosen to make federal reimbursements available. However, as Judge McMillian's opinion demonstrates, the existing federal decisions, including prior decisions of this Circuit by which the present panel is bound, are to the effect that a state's approach to the public funding of abortions through the Medicaid program cannot be more restrictive than the Hyde Amendment (citations omitted). Faithfulness to the law as it is, rather than as one

might think it ought to be, requires us to reject defendants' position to the contrary.

*Id.* at 504.

Despite *Oglala* and *Dalton,* an Eighth Circuit panel, in *United States v. Tucker,* 78 F.3d 1313 (8th Cir.1996), rendered an opinion which appears to conflict with *Oglala.* At the very least, *Tucker* added a new dimension to the issue of reassignment of a trial judge. The Court held that a party may wait until after losing at the trial, then ask for a new judge during the appeal. In *Tucker* no one had expressed any reservation about Judge Henry Woods' presiding. Then, after losing in the trial court, Independent Counsel asked the Court of Appeals to remove Judge Woods, citing 28 U.S.C. § 455(a) and 28 U.S.C. § 2106; the latter provides:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.[2]

As Judge Weinstein points out, 28 U.S.C. § 2106 does not address disqualification or

---

**2.** Approximately three months after *Tucker* was decided, the Eighth Circuit again addressed this issue. In *In re Kansas Public Employees Retirement System,* 85 F.3d 1353 (8th Cir.1996) (*KPERS*), the Court held that KPERS had waived its right to complain about the district judge's alleged conflict of interest because its objection was not "timely made."

The opinion distinguishes *Tucker* with the following language:
> *Oglala Sioux,* however, which predates both *Holloway [v. United States,* 960 F.2d 1348 (8th Cir.1992)] and [*United States v.*] *Bauer, [*19 F.3d 409 (8th Cir.1994)], involved both § 455(a) and (b) claims and imposed a timeliness requirement upon both. *Tucker,* resting primarily on the exercise of this court's supervisory powers under 28 U.S.C. § 2106, specifically holds that a § 2106 request must be timely made and that a § 2106 request made in an appellate brief satisfied § 2106's timeliness requirement. Because it was not necessary for the *Tucker* panel to determine whether § 455(a) has a timeliness requirement attached to it in order to determine whether the Independent Counsel's § 2106 request was timely,

we believe the panel's comments, to the extent they can be construed to indicate that there is no timeliness requirement for § 455(a) challenges, are not controlling in this case.... We subscribe to the view that motions to recuse should not "be viewed as an additional arrow in the quiver of advocates in the face of [anticipated] adverse rulings."
*KPERS,* 85 F.3d at 1360.
This raises the question of whether a party may escape the timeliness requirement of § 455(a) by simply citing § 2106 (which addresses neither disqualification, nor timeliness, nor waiver).
I realize that the problem I have in reconciling the language of the various Eighth Circuit decisions may not be a problem shared by others. As an example, I would have thought that appellee's counsel in *Tucker* would have been derelict if he had not moved to strike the Independent Counsel's first-time-on-appeal recusal request; yet the Court stated that his motion was "perilously close" to frivolous.
In other words, I cannot understand why his motion to strike was not fully authorized, if not required, by *Oglala.* I believe other district judges will share my concerns and will think they should be addressed.

reassignment, but some circuit courts have used this as a vehicle to remove trial judges.

Because the recusal issue had not been raised at the trial level in *Tucker*, there was no hearing in that court, no evidentiary record, nor any recusal order for the appellate court to review. Instead, the Court reviewed a Supplemental Appendix, filed by the Appellant at the request of the Court of Appeals, consisting entirely of magazine articles, newspaper articles and transcripts of television shows. The vast majority of these items did not mention Judge Woods. Those which did, noted his friendship with the Clintons.

Because the indictment in *Tucker* did not implicate the Clintons, directly or indirectly, it is still hard for me to understand the relevance of the Supplemental Appendix. It did reflect the friendship between the Clintons and Judge Woods, but the relevance of this is where I am lost.[3]

It appears that *Tucker* also changed the rules of evidence for disqualification requests. The items in the Supplemental Appendix were all garden-variety hearsay, most of them containing hearsay within hearsay, or triple hearsay.

In *McCall v. Delo*, 31 F.3d 750 (8th Cir. 1994), the Court wrote:

> We also reject McCall's suggestion that an article which appeared in a detective magazine before the trial constitutes (or contains) new evidence of his innocence. Statements in the article which were attributed to police officers contained multiple levels of hearsay and simply do not possess the hallmarks of trustworthiness necessary for our review.

*Id.* at 752.

In *Miller v. Tony and Susan Alamo Foundation*, 924 F.2d 143 (8th Cir.1991), the defendant attempted to disqualify the presiding judge and presented newspaper articles in support of this motion. The Court wrote:

The newspaper articles, which were rank hearsay and demonstratively inaccurate, did not constitute a basis for recusal. The district judge properly denied the motion. *Id.* at 147.

Many of the articles submitted in the *Tucker* Supplemental Appendix were published well in advance of the trial court's decision. In other words, the articles upon which the motion to disqualify were based were well known to the appellants before the adverse ruling in the trial court.

Certainly the gist of the articles—that the trial judge was a friend of President and Mrs. Clinton—was well known to the Independent Counsel. Indeed, in the Independent Counsel's brief in the Eighth Circuit (where he raised the recusal/reassignment issue for the first time), he expressly stated that the information upon which he was relying was "in the public domain."

In other words, it is hard to escape the conclusion that, in *Tucker*, Independent Counsel did what the courts have generally prohibited—he sat on information until after he had lost, then raised the objection for the first time on appeal.

After *Tucker*, it appears that, not only is a party not required to raise the disqualification issue at the trial level, good advocacy would require that the issue be raised only after an adverse decision.

The *Tucker* Court impliedly held that a trial judge should *sua sponte* recuse from a case based on media reports of his friendship, not with any of the litigants or lawyers appearing in the case, but with persons who are acquainted with litigants, or who might—according to media reports—be embarrassed by the outcome of a case.

How do I apply *Tucker* to the facts of this case? I was appointed to the bench by President Clinton and have been friends with the Clintons for many years. As far as I know, however, Mr. Fiske neither said nor did anything which would embarrass the Clintons.[4]

---

3. This is quite unlike the indictment in the case tried before Judge George Howard where Mr. Tucker and others were convicted. Mr. Tucker's co-defendants and the Clintons had had business relations at one time.

4. If we are to rely upon media reports, it is my understanding that there were reports that Mr. Fiske was replaced because he had failed to take action against the Clintons. For the record, I neither credit nor discredit these reports.

Further, I do not know Mr. Fiske or Mr. Satterfield, and I do not know who their friends and acquaintances are.

Also, I do not know whether the news media has reported a "link" between Mr. Fiske and the Clintons—which would require me to recuse (at least under *Tucker*).

As an example, I understand that one newspaper, with national circulation, published an editorial in which it was alleged that Mr. Tucker was President Clinton's "hand-picked" successor. Everyone—or, more correctly, nearly everyone—knows that this claim is wholly untrue. On the other hand, there may have been similarly unfounded reports allegedly connecting Mr. Fiske and the Clintons.

I could conduct a hearing and invite the parties to comment upon recusal. On the other hand, 28 U.S.C. § 2106, unlike § 455(a), does not have a "waiver" provision. It is not at all clear, then, that the parties could waive a *Tucker*-type disqualification.

This again underlines the dilemma I face. On the one hand, I have an affirmative duty to uphold the integrity of the random selection process and its purpose by refraining from recusal where there is no objective reason to do so. On the other hand, under *Tucker*, it would seem that I should recuse because of my relationship with the Clintons, *if* the media alleges a connection between Mr. Fiske and the Clintons.

If I recuse, to whom will the case fall? Virtually all federal judges were involved in political and civic activities prior to their appointments. All of us were either a Democrat or a Republican. After appointment, however, we are expected to put political considerations aside and decide issues on the merits.

If, however, recusal is to be based upon a "friend of a friend" theory, then all federal judges in Arkansas, save the Honorable G. Thomas Eisele (who was appointed to the federal bench before Bill Clinton became active in politics), should recuse.

I presume all federal judges in this district either supported or opposed Bill Clinton at some point in his Arkansas political career. To my certain knowledge, some of my colleagues have supported him vigorously, and some of them have opposed him vigorously. In point of fact, some have opposed Mr. Clinton in his races for political office in Arkansas more openly and vigorously than Judge Woods supported him.[5]

The question obviously is whether judges who opposed Bill Clinton, as well as those who supported him during his Arkansas campaigns should recuse in every case involving this Independent Counsel.

## CONCLUSION

After the *Tucker* decision, I wrote the Eighth Circuit, suggesting that it promulgate a rule which would require a party to raise known grounds for disqualification at the trial level. I again make this suggestion.

Be that as it may, if I do not recuse in this case, and *Tucker* is ultimately followed—rather than *Oglala*—a considerable waste of judicial resources would result. Accordingly, I recuse.

---

5. This political activity occurred before any of us were appointed judges. And support or opposition at that time was entirely appropriate.